## COLT'S INDUSTRIAL UNION v. COLT'S MANUFACTURING COMPANY

SUPERIOR COURT     HARTFORD COUNTY     FILE NO. 85640

Memoranda filed November 30, 1949, and January 5, 1950.

*Zeman, Monchun & Cooper,* of Hartford, for the Plaintiff.

*Robinson, Robinson & Cole,* of Hartford, for the Defendant.

INGLIS, J.   This is an application to compel arbitration brought under General Statutes, § 8153.   As of September 13, 1948, the parties to this action entered into an agreement which is still in effect.   The effect of article 11, § 1, and article 12 of that agreement is that after being processed under the grievance procedure provided for in article 11 without settlement there shall be submitted to arbitrators "differences as to the application of the terms of this agreement."   The decision of this case turns upon the interpretation of the quoted phrase of the agreement.   The language is broad.   It includes "all" differences which may arise in the application of the terms of the agreement.   It is not essential that the particular difference can be decided by reference to any express term of the agreement which in itself contains the answer.   It is essential that the decision of the specific question is essential in the application of the terms of the agreement as a whole.   Accordingly, the arbitrability of any dispute depends upon the question whether the decision of the dispute is involved in the application of the terms of the contract.   The mere fact, for instance, that there was excluded from the contract proposed terms which if they had been included would have indicated the decision of the dispute, although that fact might well weigh with the arbitrator in his decision, does not necessarily preclude arbitration of the dispute.   It would still be arbitrable if there are terms of the contract which apply to the subject matter of the dispute.   The arbitrability of a difference, therefore, depends upon the question whether the subject matter thereof is covered by the terms of the contract.

The first difference which the plaintiff desires to submit to arbitration is the question: "Is the Company in violation of the contract if it retimes jobs in its entirety when only certain elements are affected by a change in method, or is the Company limited to confine the retiming only to those affected by the change in design or machinery or tooling or all three?"

The effect of retiming an operation may well be to decrease the incentive wages i. e., the piece work wages, of the employee who performs that operation. To put it roughly, if an operation is retimed so as to increase the number of pieces which an employee must turn out in an hour before he begins to earn more than his base rate per hour, it results in a diminution of his actual earnings per hour.

Section 7A of appendix A of the agreement provides: "During the life of this agreement there shall be no downward revision of wage incentive rates except as justified by change in design, or machinery, or tooling, or all three." The retiming which is referred to in the question proposed for arbitration is that brought about by reason of change in design or machinery or tooling. As pointed out above, it may well result in a downward revision of wage incentive rates. Under the agreement such a downward revision may be made only if it is justified by reason of the change in design, machinery or tooling. Whether or not the revision downward is justified depends upon whether the method of retiming the operation which has been changed is a correct method, a method which is fair and just. It is apparent, therefore, that in order to properly apply this § 7A of appendix A of the contract the question of what is proper retiming must be settled. The question is one which is within the subject matter covered by the agreement and the difference which has arisen concerning it is properly arbitrable under the agreement.

The second question involved in the case is put as follows: "Is the company in violation of the contract in assigning work which is normally performed by employees in the bargaining unit to supervisors designated by the Company as 'working supervisors'?" If the company gives to working supervisors, who are not members of the bargaining unit, work which is normally done by members of the bargaining unit it is apt to result in a discharge from employment or at least a layoff of some members of the bargaining unit.

Article 6 of the agreement contains very elaborate provisions relating to the order in which employees are to be laid off or recalled to work. Except, however, for the provisions in § 17 to the effect that there shall be no layoffs while others in the same occupation are on overtime work, there is no provision restricting the company's right to determine when a layoff is necessary or advisable. In other words, the article in question determines the order in which employees may be laid off but there is nothing in it which relates to the rights of the company to determine what justifies it in laying off some employees. Nor is there anything in article 2 of the agreement which relates to the recognition of the union as a bargaining unit which bears upon the right of the company to determine when a layoff is proper.

In other words there is nothing in the agreement on the subject matter of when the company is permitted to lay off members of the bargaining unit except that it may not be done while some employees in the same occupation are employed overtime. That being so it follows that the question whether the company has the right to give additional work to its working supervisors even though that may result in the layoff of a member of the bargaining unit is not within the subject matter of the agreement. It therefore is not a question which the company is bound to submit to arbitration.

The third question proposed by the plaintiff is as follows: "Is the company in violation of the contract in refusing to make available to the union time study sheets and other pertinent data in grievance involving time study?"

Here again although article 11 provides for various steps in the adjustment of grievances, neither here nor anywhere else in the agreement is there any provision relating to the interchange of information as to time studies between the parties. Certainly the general provision in article 1 that "the purpose of this agreement is to provide orderly collective bargaining relations . . ., to assure prompt and equitable disposition of grievances and to provide fair wages, hours and working conditions for the employees" does not relate to the exchange of information relating to time studies. If such a question as this one proposed were submitted to an arbitrator he could find nothing in the agreement which would govern his decision of it. It is clear, therefore, that the difference between the parties as to whether the company must furnish the union with information

concerning its time studies is not one involving the application of the terms of the agreement. Accordingly it is not a question which under the agreement is arbitrable.

Judgment may enter directing the defendant to proceed in accordance with article 12 of the agreement to arbitrate the difference as stated in the first question set forth in exhibit B annexed to the complaint but denying the prayer for arbitration of the questions set forth as 2 and 3 in said exhibit.

---

### SUPPLEMENTAL MEMORANDUM OF DECISION

INGLIS, J. The plaintiff has moved for a reopening of the judgment directed by memorandum filed November 30, 1949, and reargument. That motion is granted and the judgment is opened.

The reargument relates to so much of the judgment as denied arbitration of the second and third disputes referred to in the complaint.

The second dispute referred to in the complaint is the question: "Is the Company in violation of the contract in assigning work which is normally performed by employees in the bargaining unit to supervisors designated by the Company as 'working supervisors'?" The plaintiff points out that such supervisors are not employees under the contract and therefore have no seniority under the contract and that, if the assignment of work to them should produce the layoff of a member of the bargaining unit who has seniority, the result would be that a man without seniority would replace a man with seniority. It claims that such a result is prohibited by article 6 relating to "lay-offs and recalls-to-work" and, in particular, § 3 of that article.

Although that contention is plausible on its face, it fails to lead to the conclusion that the question submitted is arbitrable under the contract, for two reasons. In the first place, the dispute as stated is in general terms. It is not a dispute arising out of a specific instance in which a member of the bargaining unit has actually been layed off because work has been assigned to a supervisor. As a matter of fact, upon the evidence the plaintiff has failed to prove that any such specific instance has actually arisen. On the contrary, it appears that any layoffs which may occur as concomitants of work being assigned to supervisors

would result primarily from shortage of work generally or other reasons not resulting from a supervisor's doing some production work. It is of course clear that article 6 of the agreement relating to layoffs can have no applicability to any question in dispute unless that question relates to layoffs. Unless and until some specific layoff can be attributed to a supervisor's taking over production work, this term of the agreement has no relevancy to the question whether it was proper under the agreement for the compnay to assign him that work. The question in dispute being stated in general terms and there having been no credible evidence to the effect that the practice therein questioned has or necessarily will result in any layoffs, the term of the agreement relating to layoffs can have no applicability to the dispute.

In the second place, even though it had appeared that the practice complained of had or would result in layoffs of members of the bargaining unit, there is nothing in article 6 which has any bearing upon the right of the company to pursue that practice. The contract as a whole does not purport to control the company in the exercise of its purely managerial functions. A part of those functions is the power to determine what conditions make a layoff of employees imperative. Section 3 of article 6, upon which the plaintiff relies, does not pertain in any way to the managerial functions of the company. It does not undertake to prescribe what conditions are requisite to the company's decision to layoff members of the bargaining unit. All that it purports to do is to fix the rights of seniority among the members of the unit which shall control the order in which they shall be layed off when the company decides that a layoff is necssary.

It appears from the evidence that at the present time the considerations which motivate the company in assigning work to supervisors are strictly managerial in their nature. It is not claimed that the company makes such assignments merely for the purpose of accomplishing the layoff of employees. It appears clearly that work is assigned to supervisors for reasons, exclusively, of what, in the minds of the executives of the company, is good management. It is stretching the terms of article 6 of the contract beyond all logic to claim that they apply in any way to the practice of assigning work to supervisors. Accordingly, the question of the right of the company to make such assignment of work is not related to any term of the agreement. It is, therefore not arbitrable under the contract.

Since the reargument of the case the plaintiff has withdrawn its prayer for a direction that the third dispute referred to in the complaint be arbitrated.

Judgment may now enter directing the defendant to proceed, in accordance with article 12 of the agreement, to arbitrate the difference between the parties as stated in the first question set forth in exhibit B, annexed to the complaint, but denying the prayer for arbitration of the second question set forth in said exhibit.