## The Danbury Rubber Company, Inc. *v.* Local No. 402, United Rubber, Cork, Linoleum and Plastic Workers of America, C.I.O.

Superior Court      Fairfield County      File No. 100853

Memorandum filed January 10, 1957.

*Cummings & Lockwood,* of Stamford, for the plaintiff.

*Daniel Baker,* of Stamford, for the defendant.

PHILLIPS, J.  This is an application by the plaintiff company for an order to vacate an award by a panel of the Connecticut board of mediation and arbitration in favor of the defendant union.

The company claims that the award is void by reason of having been rendered beyond the statutory period required by General Statutes § 8159. The following relevant dates appear to be admitted by the parties in brief and argument: The union filed a grievance with the company April 22, 1955; following the company's final reply, dated September 22, 1955, the union referred the grievance to the Connecticut board of mediation and arbitration; the company did not join in the submission; hearings were had by a panel of the board on January 5, January 25 and March 8, 1956, both parties participating; summary briefs were submitted to the arbitrators on April 30, 1956. The arbitrators rendered an award September 5, 1956.

Section 8159 is a part of chapter 398, which is the general chapter on arbitration proceedings. It provides that if the time within which an award shall be rendered is not fixed in the arbitration agreement, it shall be rendered within sixty days from the date on which the arbitrators "were empowered to act." It further provides that an award made after that time shall have no legal effect unless the parties agree in writing to extend the time. "Empower" means "[t]o give authority to; to delegate power to; . . . to authorize." Webster's New International Dictionary (2d Ed.). Arbitrators are empowered to act after they have been appointed and the matter in controversy has been submitted to them. See *Pratt, Read & Co.* v. *United Furniture Workers,* 136 Conn. 205, 210. It is then that they have been given authority to act: to take the oath, to conduct hearings, to arbitrate the dispute. In the present case it does not appear of record on what date the panel of the Connecticut state board of mediation was appointed or when the grievance of the union was submitted to the panel, except that from the briefs and arguments it is apparent that

these dates were between September 22, 1955, and the first hearing on January 5, 1956. If then this statute is applicable to the present case, the award has no legal effect, since it was rendered long after sixty days from the date the arbitrators were empowered to act. See *International Brotherhood of Teamsters* v. *Shapiro,* 138 Conn. 57, 68.

The court holds, however, that this statute is not applicable to an arbitration before the Connecticut board of mediation and arbitration. Such a proceeding is a special one governed by the provisions of chapter 369, which creates the board, describes its functions and sets forth the procedure to be used when a matter is referred to it. Section 3029d of the 1955 Cumulative Supplement (formerly § 7385 of chapter 369) provides that after a matter has been fully heard, the panel shall render a decision thereon in writing within fifteen days. Where, as in this case, provisions of the two chapters are inconsistent, specific terms covering the subject matter will prevail over general language of another statute which might otherwise be controlling. *Pratt, Read & Co.* v. *United Furniture Workers,* supra. That case is determinative of the present. Though the Supreme Court in that case was apparently discussing § 7384 (now § 3028d) rather than § 7385 (now § 3029d), the same principle applies to the latter. In fact Judge Comley, in his memorandum at nisi prius in that case, specifically stated that where a matter has been referred to the state board, the provisions of §§ 3028d and 3029d, of chapter 369, and not those of § 8159, are applicable. See A-262 Rec. & Briefs 135.

Since the time limitation in each statute, § 8159 and § 3029d, for rendering the award has a totally different starting point, there is the possibility of conflict between them. This is well illustrated in the

present case. If § 8159 were to apply, the sixty-day limitation would have expired before the hearings were concluded. It is probable that the legislature, because of the nature of the board's duties, its composition, and the possibility of protracted hearings in labor disputes, considered it wise to fix a date for the award after the matter has been fully heard, rather than a fixed number of days from the submission.

Since § 3029d is controlling, rather than § 8159, the written decision should have been filed within fifteen days after the matter had been fully heard, which in this case was April 30, 1956. This provision, however, unlike that in § 8159, is directory rather than mandatory. *International Brotherhood of Teamsters* v. *Shapiro,* 138 Conn. 57, 68. The statute contains nothing which expressly invalidates a belated award or which inferentially makes compliance therewith a condition precedent. Ibid. It will be observed that in both the *Pratt, Read & Co.* case, supra, and the *Shapiro* case, supra, more than sixty days had elapsed since the date of submission when the award was rendered, and in both the award was sustained. The award is not invalid because it was not rendered within the time fixed by statute.

The company claims that even if § 8159 was not applicable, the award should be vacated as not made within a reasonable time. Five months elapsed between the filing of the original grievance with the company and the company's final reply; hearings were not concluded until after another five months; briefs were submitted seven weeks later on April 30, 1956. The award was rendered September 5, 1956. Considering the leisurely pace of the proceedings prior to the filing of briefs, the fact that there were 200 pages of testimony to be typed and thereafter to be studied by the panel, and the occurrence of the summer months, the four months

which the panel took to file its award was not an unreasonable time.

The company claims that the arbitrators lacked jurisdiction, since there was no arbitrable grievance within the terms of the collective bargaining agreement. Article II of the agreement provides a method for handling "grievances arising from the interpretation or application of the terms of this agreement" and then provides in A3 that upon failing to reach an adjustment of the grievance "it shall be submitted to the Connecticut State Board of Mediation to act as arbitrators whose decision shall be final and binding on both parties. The arbitrator shall not add to or subtract from any part of this agreement." In its grievance, the union claimed that the "Company set a new rate with a new formula by which we are unable to maintain our previous hourly earnings. Article IV Paragraph 10." Article IV, paragraph 10, of the collective bargaining agreement, so far as relevant, provided that no piecework rate shall be lowered during the life of this contract unless the method, speed, tools, etc. are changed.

The arbitrability of a difference in such a situation depends upon the question whether the subject matter thereof is covered by the terms of the agreement. *Colt's Industrial Union* v. *Colt's Mfg. Co.*, 16 Conn. Sup. 360, 361. The union asserts that the piecework rate was lowered. The company asserts that the piecework rates were never changed but that it merely set a new time-cycle setting and that time-cycle settings are not piecework rates. However, the new setting carried with it a lower piecework rate, in accordance with a previously negotiated rate sheet. The subject matter of this grievance therefore was directly related to the interpretation and application of article IV, para-

graph 10, of the agreement and was clearly arbitrable.

The company further claims that the arbitrators have exceeded their powers in making an award which interferes with the company's right to determine the processes of production. It cites paragraph 2 of the award: "The 12-minute cycle time should be applied to the production of 1500 series stock master batches for the period starting April 22, 1955." According to the company, this constitutes an encroachment on management's prerogatives by the arbitrator. The court does not so interpret paragraph 2 of the award. The arbitrators meant by this direction that the company should pay for all production since the change in the time cycle on April 22, 1955, on the basis of the 12-minute cycle and not the 10-minute cycle. Its award affects only the rate of pay. It in no manner bears upon the processes of production.

A further claim is that the arbitrators rewrote the collective bargaining agreement and thereby exceeded their powers. As appears above, the agreement provides that the "arbitrator shall not add to or subtract from any part of this agreement." The claim is that the net result of the award is that for a 10-minute cycle, for which there was a negotiated piecework rate, the company must now pay the piecework rate corresponding to the 12-minute cycle. Whether or not these piecework rates are an integral part of the contract, as stated by the company, the contract prohibits a cut in piecework wages unless there is a change in method, speed, tools, etc. The company has expressly disclaimed that any method change was involved in the change in formula. The arbitrators' memorandum states that "this change in cycle setting must be accompanied by a corresponding change in the processing of material in order not to be in conflict with Section

10 of Article IV, which stabilizes piecework rates in effect when the contract was signed. Under the circumstances presented, when the change in cycle setting affected only the method of payment to the men and not the method or speed of processing the material, a violation of the contract must be declared." There is no merit to the company's contention in this regard.

Finally the company claims that the award was invalid because it did not respond to the submission. It is elementary that the award must conform to the submission; *Local 63, Textile Workers Union* v. *Cheney Bros.*, 141 Conn. 606, 613; and it is void to the extent to which it is outside the submission. Ibid. The grievance submitted was that the "Company set a new rate with a new formula by which we are unable to maintain our previous hourly earnings. Article IV, Paragraph 10." The award recited that the "Company violated the contract by changing the cycle on master batches from 12 minutes to 10 minutes." The submission sets forth with reasonable clarity that the question to be arbitrated is whether there has been a lowering of piecework rates in violation of the contract. The award answered this very question in the affirmative. It is obvious that the meaning of the award is that the contract was violated by lowering the rate through a change in the cycle on the master batches from twelve minutes to ten minutes.

The company complains because the award did not make any determination as to whether the employees could maintain their previous hourly earnings. Such a determination became unnecessary in view of the position taken by the company during the hearings. It explicitly disclaimed any change of method and the panel noted this position. The panel further found that the company had failed to establish "that the time necessary to process the material

through the Banbury had been altered by the formulation changes of February 2 and April 22, 1955." Under article IV, paragraph 10, the question of maintenance of previous hourly earnings arises only where a change in piecework rates is made because of a change in method, speed, tools, etc. In such case only, "the new rate shall be established so as to maintain the previous hourly earnings of the employee." It is obvious that when the grievance was filed the union had no way of knowing that the company would not claim a method change. In view of developments at the hearing, the panel correctly refrained from finding upon an issue which had become wholly irrelevant.

The collective bargaining agreement, article II, A3, provided for an unrestricted submission. See *Chase Brass & Copper Co.* v. *Chase Brass & Copper Workers Union,* 139 Conn. 591, 595. The principles governing the finality of an award by arbitrators are well set forth in *Matter of Wilkins,* 169 N.Y. 494, 496, and are applicable to the present case: "Where the merits of a controversy are referred to an arbitrator selected by the parties, his determination, either as to the law or the facts, is final and conclusive, and a court will not open an award unless perverse misconstruction or positive misconduct upon the part of the arbitrator is plainly established, or there is some provision in the agreement of submission authorizing it. The award of an arbitrator cannot be set aside for mere errors of judgment, either as to the law or as to the facts. If he keeps within his jurisdiction and is not guilty of fraud, corruption or other misconduct affecting his award, it is unassailable, operates as a final and conclusive judgment, and however disappointing it may be the parties must abide by it."

The application for an order vacating the award is denied.