**LOCAL UNION 560, INTERNATIONAL BROTHERHOOD OF TEAMSTERS**

v.

**ANCHOR MOTOR FREIGHT, INC.,**
**Appellant.**

**No. 17429.**

United States Court of Appeals
Third Circuit.

Argued April 24, 1969.

Decided Aug. 15, 1969.

national Brotherhood of Boilermakers etc. v. Braswell, 5 Cir. 1968, 388 F.2d 193.

Richard C. Hotvedt, Washington, D. C., Morgan, Lewis & Bockius, Philadelphia, Pa., for appellant (Gregory M. Harvey, Philadelphia, Pa., on the brief).

Edward A. Cohen, Beckerman & Franzblau, Newark, N. J., for appellee.

Before BIGGS, FREEDMAN and STAHL, Circuit Judges

## OPINION OF THE COURT

FREEDMAN, Circuit Judge:

The question presented is whether a party to a labor arbitration who had sought and awaited an award after the time fixed for its rendition had run, may terminate the arbitrator's authority by notice before the award is rendered that he will not be bound by any award which may thereafter be handed down.

Plaintiff and defendant were parties to a multi-union, multi-employer collective bargaining agreement known as the Eastern Conference Area Truckaway, Driveaway, Yard and Shop Agreement. Disputes arose regarding the right of some of defendant's New Jersey drivers to receive premium pay for weekend deliveries which they were dispatched to make from a terminal in Flint, Michigan. The Union claimed that the Eastern States area contract applied, while the Company's position was that another contract, one for the Central States area, governed. Grievances were filed with the Company on April 14, 1965. They were processed internally as provided by the Agreement and when they were not settled to the satisfaction of the Union, they were presented to a panel of the Eastern Conference Automobile Transporters Joint Committee. The Joint Committee, after a hearing, declared itself deadlocked on March 17, 1966. Under the Agreement, this made the grievances subject to arbitration by an arbitrator selected from a list submitted to the Union and the Company by the Federal Mediation and Conciliation Service.[1] On March 25, 1966, the Union invoked this procedure by applying to the Federal Mediation and Conciliation Service for the designation of an arbitrator.

The Service designated an arbitrator on April 22, 1966, and in so doing wrote to him and the parties:

"Awards are to be made within 30 days after the close of the hearing, unless the time is extended by agreement of the parties confirmed in writing. The Arbitrator should advise this office in writing if the hearing is unduly delayed or if there is a delay in the rendition of the award."

After some difficulty in fixing a date convenient to the parties, a hearing was held on June 23, 1966, in which both parties participated. On its adjournment, it appeared that a second hearing would be required for further testimony, unless the parties would agree to present the evidence by affidavits. Almost four months later, on October 12, 1966, the parties agreed to forego oral testimony and submit affidavits. It was not until December 16, 1966, that the union filed its affidavit and February 13, 1967 that the Company advised the arbitrator that it would not file any counteraffidavit. The parties then

1. Agreement, Article 6, § 5(a).

agreed, with the approval of the arbitrator, that the hearing should be deemed closed upon the filing of briefs, which were to be postmarked no later than March 15, 1967. The briefs were filed within the prescribed time.

The thirty-day period for the filing of the arbitrator's award expired on April 14, 1967, but no award was filed and no objection or even comment was expressed to the arbitrator at that time. More than three months later, on July 25, 1967, the Union's counsel wrote to the arbitrator referring to the fact that the briefs had been filed in March and stating that the Union had inquired when the decision would be forthcoming and desired to have the award made as soon as practicable. Receiving no response from the arbitrator, the Union's counsel wrote to him again on August 18, 1967, referring to the prior letter and saying: "I didn't hear from you and I decided to drop you this note as a reminder. I would appreciate hearing from you so that I will be in a position to keep my client advised."

The arbitrator replied on August 29, 1967 that he had returned that day from vacation, and went on to say: "Since the briefs were about eight months in coming in, I was not aware of any need for haste. However, I am just finishing up a decision and will start on yours this week and hope to have it finished by the end of next week." Two months later, on October 30, 1967, the Union's counsel again wrote to the arbitrator pointing to the delay, the urging of his client and its interest in having a decision as soon as possible. On November 8, 1967, having received no reply, the Union's counsel wrote to the Director of the Federal Mediation and Conciliation Service, enclosing copies of his correspondence, and pointing out that no award had yet been made, although the hearing had been held on June 23,

1966 and the briefs had been filed by March 15, 1967. The letter then stated:

"Under the circumstances, I must advise that I will object to *any award postmarked after November 8, 1967* as not rendered in accordance with the Rules and Regulations of the Federal Mediation & Conciliation Service nor in accordance with any prior acquiescense of the Rules in order to allow the arbitrator sufficient time to render a decision. In short, I do not believe that I must wait indefinitely for an award. The courtesies given an arbitrator, as far as I am concerned, have been grossly abused.

\*     \*     \*     \*     \*     \*

"Under the circumstances, will you kindly forward to the parties a new panel so that the case can proceed to hearing and decision." [Emphasis in original.]

On November 24, 1967, the General Counsel of the Service replied that it did not have authority to submit another panel to the parties unless they jointly requested it and asked the Company to state its position on the request. On receiving this reply the Union's counsel requested the Company's agreement to a new arbitrator, or at least to the submission of a new panel by the Service. On December 6, 1967, the Company wrote to the Union and the Service maintaining that the case could not be reassigned without the consent of both parties and declaring the Company's belief that they should patiently await a decision by the arbitrator to whom they had submitted their dispute. Two days before, on December 4, 1967, the arbitrator had made his award and mailed copies to the parties.[2]

The Union then instituted this action in the Chancery Division of the Supreme Court of New Jersey under § 301(a) of the Labor Management Relations Act (29 U.S.C. § 185) to have the award vacated and the Company directed to join in the designation of a new arbitrator, on the

2. The record shows that the Union received a copy of the arbitrator's award on December 6, 1967; it does not show when the Company received its copy.

ground that the arbitrator's power had automatically ended on the expiration of the thirty-day period and the award therefore was null and void, or in the alternative, that the Union had terminated the arbitrator's jurisdiction by its notice prior to the award that it would not be bound by it.

The Company removed the proceeding to the District Court for the District of New Jersey, which subsequently granted the Union's motion for summary judgment on the ground that there should be incorporated into the federal common law developed under § 301(a) [3] the common law rule in commercial arbitration under which the arbitrator's power to act would expire at the end of the thirty-day period. The district court viewed the Union's notice that it would reject the arbitrator's award as sufficient to render the award invalid, and found that it was not estopped from repudiating the award by its participation in the delays preceding the submission to the arbitrator. It therefore vacated the arbitrator's award as null and void and ordered the Company to perform specifically its obligations under the collective bargaining agreement by participating in the selection of a new arbitrator before the Federal Mediation and Conciliation Service and in a new arbitration hearing.

The question is a significant one in the important field of arbitration of labor disputes and in the circumstances presented to us apparently is one of first impression. We must review at the outset the terms of the collective bargaining agreement and the construction the parties gave it. The Agreement provided that a grievance on which a panel of the Joint Committee was deadlocked should be submitted to an impartial arbitrator named by the Union and the Company, and if they were unable to agree, either party could refer the selection to the Federal Mediation and Conciliation Service which would submit a list of arbitrators to the parties who would then report their preferences, from which the Service would make the appointment. The Agreement then provided:

> "The arbitrator shall, if possible, render his decision at the conclusion of the hearing. In any event, his decision must be handed down as soon as possible, or, at the most, no later than thirty (30) days after the conclusion of the hearing before him." [4]

The Agreement thus was made in contemplation of the participation of the Federal Mediation and Conciliation Service in the event the parties failed to agree on an arbitrator after a deadlock in the Joint Committee. Its interpretation, therefore, must be considered in the light of the Service's Regulations (29 C.F.R. §§ 1400, et seq.), which were adopted to advance the declared federal policy of promoting the peaceful settlement of labor disputes.[5] Particularly significant is § 1404.9, which provides:

> "Early hearing and decision of industrial disputes is desirable in the interest of good labor relations. The parties should inform the Service whenever a decision is unduly delayed. The Service expects to be notified if and when * * * an arbitrator cannot schedule, hear and determine. issues promptly. * * * The award shall be made not later than thirty (30) days from the date of the closing of the hearing, or the receipt of * *

3. Textile Workers Union v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

4. Agreement, Article 6, § 5(a).

5. The Act of Congress establishing the Service declares that it is the policy of the United States that "the settlement of issues between employers and employees through collective bargaining may be advanced by making available full and adequate governmental facilities for conciliation, mediation, and voluntary arbitration * * *." 29 U.S.C. § 171(b). Section 1404 of the Regulations, which relates to arbitration, announces a similar policy. See 29 C.F.R. § 1404.1. The Regulations provide for the maintenance by the Service of a roster of arbitrators and the procedure for obtaining the nomination of arbitrators by the Service. See 29 C.F.R. §§ 1404.2, 1404.4, 1404.6, 1404.7.

any posthearing briefs * * * unless otherwise agreed upon by the parties or specified by law. However, a failure to make such an award within thirty (30) days shall not invalidate an award. The Service, however, when nominating arbitrators, takes notice of any arbitrator's failure to comply with its policies and procedures. * * * The parties may * * * provide in their agreement * * * that an award must be rendered within a fixed time after the close of the hearing in order to be valid, unless the time is enlarged by agreement of the parties. Such a provision, however, would operate to nullify an award made after such a period of time and should therefore be carefully drafted so as not to cause hasty and ill-considered decisions."

This Regulation makes it clear that unless the parties specify otherwise the Service's thirty-day time limit for the rendition of an award applies and that the failure to make an award within the prescribed time "shall not invalidate" it. If the parties desire to bind themselves to a more drastic rule, they must clearly and unequivocally provide for the automatic invalidity of the award on the expiration of the prescribed time. Otherwise, the only pressure on the arbitrator under the Regulations is the risk that the Service may remove his name from its approved list in future arbitrations. Of course, the parties need not employ the precise words suggested in the Regulation to express an intention to render a later award invalid. But such an intention must unequivocally appear in the collective bargaining agreement. The provision in the Agreement of the thirty-day time limit similar to that prescribed by the Regulation serves the same purpose as the Regulation. It also provides for those cases outside the Regulation where, after a deadlock in the Joint Committee, the parties agree on an arbitrator without applying to the Service for a list of arbitrators. Here,

as in the case of an arbitrator selected through the Service, there can be found no intention to render an award made after thirty days automatically invalid.

The interpretation that the thirty-day period does not invalidate a late award is confirmed by the conduct of the Union and the Company both before and after the arbitrator's hearing.

The Agreement provides that an arbitrator's hearing "shall be held no later than two (2) weeks from the date of the appointment of the arbitrator." [5a] The parties worked out a mutually satisfactory time for the hearing which was two months after the arbitrator's designation. Neither party raised any objection to this disregard of the time limit for holding the hearing.

Far more significant is the conduct of the parties in continuing to look to the arbitrator for the rendition of his award after the thirty-day period expired on April 14, 1967. On July 25, 1967, three months after the thirty-day period had expired, the Union inquired of the arbitrator when the decision would be forthcoming and expressed its desire to have the award made as soon as practicable. It sent a similar reminder to the arbitrator almost a month later, on August 18, 1967. When the arbitrator replied on August 29, 1967 that he had returned from vacation and hoped to have the award completed in about a week's time, the Union did not object to his intention to file his decision. It waited for two months and then, on October 30, 1967, again complained of the delay and urged that he render a decision.

All this conduct which preceded the ultimate effort of the Union on November 8, 1967 to terminate the arbitrator's authority, is a recognition that under the Agreement, as well as under the Regulation, the expiration of the thirty-day period did not of itself terminate the authority of the arbitrator or automatically invalidate a late award. The arbitrator's authority continued for a rea-

5a. Agreement, Article 6, § 5(a).

sonable time thereafter. Under the thirty-day provision of the Agreement and of the Regulation alike the time was not "of the essence,"[6] but was "directory" only and not "mandatory."[7] The consent of the parties, therefore, was not necessary to the continuance for a reasonable time of the arbitrator's authority to decide the controversy which then was under his consideration.

The same result would follow whether the extension of the arbitrator's authority for a reasonable time followed from the Agreement and Regulation or from the conduct of the parties. In either case, the Union had the power to terminate its consent at any time upon a showing of prejudice or harm caused by the delay, or after a reasonable time from the giving of notice of the withdrawal of its consent. Here, however, the Union declared its notice of termination of consent effective on the day it was given; it made no claim of harm from the delay and assigned as its sole ground the arbitrator's abuse of its courtesy. In the circumstances, therefore, whether the continuance of the arbitrator's authority after April 14, 1967 sprang from his original appoint-ment or from the informal consent of the parties, not enough has been shown to justify its sudden and abrupt termination by the Union.

■ Labor arbitrations under collective bargaining agreements should not be returned to the majority rule developed in common law arbitration of commercial disputes, which held automatically invalid an award made beyond the time limit specified in the submission, rule of court or statute,[8] although even in such cases it was recognized that the right to object would be deemed waived by further participation in the proceedings after an award was overdue, or by failure to object until an unfavorable award was handed down.[9] The common law's traditional hostility to arbitration generated the principle that a party could revoke the authority of the arbitrator at any time because he served only as the party's agent.[10] Neither the spirit nor the consequences of the common law view of commercial arbitration should be imported into labor arbitration, for as the Supreme Court pointed out in United Steelworkers of America v. Warrior & Gulf Navig. Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 1351, 4 L.Ed.2d

6. See 3A Corbin, Contracts, pp. 352–384 (1960); Restatement, Contracts, § 276. See also Fagnani v. Integrity Finance Corp., 53 Del. 193, 167 A.2d 67 (Del. Super.Ct.1960).

7. Cf. Danbury Rubber Co. v. Local No. 402, United Rubber etc. Workers, 20 Conn.Sup. 300, 134 A.2d 356 (1957), aff'd 145 Conn. 53, 138 A.2d 783 (1958).

8. See, e. g., cases collected in Annot., 154 A.L.R. 1392, 1394. See also Sturges, Commercial Arbitrations and Awards, § 222 at p. 523 (1930).

9. See, e. g., cases collected in Annot., 154 A.L.R. 1392, 1403–04. See also cases cited at n. 11, infra.

10. See 6A Corbin, Contracts, § 1438 at p. 412 (1962); Annot., 154 A.L.R. 1392, 1395–96; Sayre, Development of Commercial Arbitration Law, 37 Yale L.J. 595 (1928). This principle was decided as long ago as Vynior's Case, 9 Coke 81b. For further discussion see generally Bernstein, Private Dispute Settlement, Ch. 2 (1968). See also opinion of Story,

J., in Tobey v. County of Bristol, 23 Fed. Cas. p. 1313 (No. 14,065) (C.C.Mass. 1845): "It is certainly the policy of the common law, not to compel men to submit their rights and interests to arbitration, or to enforce agreements for such a purpose. Nay, the common law goes farther, and even if a submission has been made to arbitrators, who are named, by deed or otherwise, with an express stipulation, that the submission shall be irrevocable, it still is revocable and countermandable, by either party, before the award is actually made, although not afterwards. This was decided * * * in Vynior's Case * * *. The reason there given, is, that a man cannot, by his act, make such authority, power, or warrant not countermandable, which is by law, and of its own nature, countermandable; as if a man should, by express words, declare his testament to be irrevocable, yet he may revoke it, for his acts or words cannot alter the judgment of law, to make that irrevocable, which is of its own nature revocable. * * * "

1409 (1960), in "the commercial case, arbitration is the substitute for litigation. Here arbitration is the substitute for industrial strife." The requirements of federal labor policy will be served by requiring that if the parties intend to provide for the automatic invalidation of a late award they must say so in unequivocal language. If they do not so provide, the authority of the arbitrator will expire after a reasonable time beyond the period originally fixed for the award has gone by. Where the parties consent to an extension of time for the award, they are not bound endlessly and one party may effectively terminate his consent before the award is handed down by giving reasonable notice, and, of course, its reasonableness must be judged in the light of the surrounding circumstances, including any element of harm or prejudice.[11]

 Here the Union has neither alleged nor proven any injury from the delay or any other special circumstances, and it cannot be said in the light of the conduct of the parties that the arbitrator's delay was so unreasonable that the Union could terminate its consent by a notice which it made effective immediately. The sudden notice of withdrawal of consent could not be made instantly effective in the absence of any claim of harm or injury, or any other circumstances which would make the notice reasonable in telescoping to the same day the time of its mailing and effective date. Indeed, to set the award aside now would only add to the delay of which the Union complains, for it would require the commencement of a new arbitration proceeding before another arbitrator. The arbitrator's award, therefore, was binding on the parties and should not have been invalidated.

The judgment of the District Court will be reversed and the case remanded with direction to dismiss the complaint.

---

11. Those federal cases under § 301(a) which have seemingly recognized the right to object to lateness in the rendering of an award have done so where the objection was held ineffective because it was not raised until after the award had been handed down. See West Rock Lodge No. 2120, I.A.M. & A.W. v. Geometric Tool Co., 406 F.2d 284, 286 (2 Cir. 1968), where the court said that "it should always be within a court's discretion to uphold a late award if no objection to the delay has been made prior to the rendition of the award or there is no showing that actual harm to the losing party was caused by the delay;" Lodge No. 725, I.A.M. v. Mooney Aircraft Inc., 410 F.2d 681 (5 Cir. 1969); Truck Drivers & Helpers v. Acme Markets, Inc., 65 L.R.R.M. 2708 (E.D.Pa.1967); District Lodge No. 71, I.A.M. v. Bendix Corp., 218 F.Supp. 742 (W.D.Mo.1963). See also Danbury Rubber Co. v. Local No. 402, United Rubber etc. Workers, 20 Conn. Sup. 300, 134 A.2d 356 (1957), aff'd 145 Conn. 53, 138 A.2d 783 (1958). Cf. the Uniform Arbitration Act, § 8(b): "A party waives the objection that an award was not made within the time required unless he notifies the arbitrators of his objection prior to the delivery of the award to him." 9 Unif.L.Annot. 78, 81 (1961).