TEXTO COMPLETO DE LA RESOLUCIÓN
El señor Héctor Hoyos, Biometrics Imagineering, Inc. y Transactional Technologies International Ltd. (en adelante, los peticionarios), mediante el recurso de epígrafe titulado “Escrito de Apelación”, nos solicitan que revoquemos la sentencia, emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 8 de marzo de 2006. En dicha sentencia el TPI confirmó el laudo emitido por un Panel Arbitral el 23 de agosto de 2005, el cual declaró con lugar la causa de acción instada por Proactiva Medioambiente, S.A. y Transactional Technologies International, Inc., (en adelante, las recurridas). Además, condenó a los peticionarios a reembolsar solidariamente a las recurridas las pérdidas en la operación y vida de Transactional Technologies International, Inc. (en adelante, TTI, Inc.) y a pagar un balance pendiente de $200,000, así como las costas e intereses legales.
Acogemos el recurso como una solicitud de certiorari, de conformidad con la Regla 32 (D) de nuestro *785 Reglamento, 4 L.P.R.A. Ap. XXII-B. Ello, toda vez que este es el mecanismo apropiado para cuestionar una sentencia final del TPI al revisar un laudo de arbitraje.
Por los fundamentos que exponemos, se deniega la expedición del auto de certiorari solicitado.
I
El 9 de octubre de '2002, las recurridas presentaron un Requerimiento de Arbitraje ante la American Arbitration Association. Alegaron que para marzo de 1999, el Sr. Héctor Hoyos le presentó a Proactiva Medio Ambiente, S.A. (en adelante, Proactiva) una propuesta para establecer en Puerto Rico una red de terminales de pago electrónico designado con el nombre de “Proyecto Reserva". Indicaron que el equipo interactivo a ser utilizado para el procesamiento de pagos había sido desarrollado por Biometrics Imagineering, Inc. (en adelante, Biometrics), compañía de la cual el señor Hoyos era el presidente y accionista mayoritario. Las recurridas señalaron que en vista de las proyecciones comerciales presentadas por el señor Hoyos, decidieron participar en el “Proyecto Reserva”.
De igual modo, en el Requerimiento de Arbitraje, las recurridas expresaron que el 3 de noviembre de 1999 suscribieron con el señor Hoyos, quien compareció por sí y en representación de Biometrics, un contrato titulado “Acuerdo Marcó”. Alegaron, que en el mismo las partes dispusieron que el “Proyecto Reserva” sería implantado a través de TTI, Inc. Además, adujeron que conforme al mencionado contrato, el señor Hoyos y Proactiva serían dueños de las acciones comunes de TTI, Inc. a razón del 30% y 70%, respectivamente. Asimismo, expusieron que el contrato establecía que Proactiva aportaría al proyecto $1,400,000 en efectivo y el señor Hoyos $600,000 en especie, ya fuera en trabajo o en “software”. También argumentaron que para octubre de 2001, TTI, Inc. enfrentó una crisis económica. Ello, debido a que aumentó el costo del proyecto al no lograrse el funcionamiento correcto del equipo. En consecuencia, las recurridas exigieron el pago del dinero adeudado así como las costas, gastos y honorarios de abogado incurridos por éstas en la tramitación del arbitraje.
Por su parte, los peticionarios contestaron el requerimiento de arbitraje y reconvinieron. Añadieron como terceros reconvenidos a Vivendi S.A., Fomento de Construcciones y Contratas, S.A. (en adelante, FCC), los señores Carlos Aguasca Castells, Angel Arias, Javier Gil, Femando Pina y Sephan Orssich. En síntesis, en su reconvención argüyeron que hubo falta de organización, desinterés e inacción en el proyecto por parte de las recurridas. Alegaron que el referido proyecto se mantuvo operando mediante el personal y recursos de Biometrics, razón por la cual incurrieron en gastos adicionales a los acordados. Explicaron que se encontraron en una situación económica crítica, toda vez que TTI, Inc. rechazó pagarles los mencionados gastos.
Además, los peticionarios alegaron que Vivendi S.A. y FCC, a través de Proactiva, nombraron al Sr. Stephan Orssich como Gerente General de TTI, Inc. para que éste controlara y se encargara del arranque de las operaciones comerciales de dicha compañía. Sostuvieron que el señor Orssich respondía a los intereses exclusivos de los directores nombrados por Proactiva, quienes protegían la inversión de capital de Vivendi/FCC. Apuntaron que, como resultado de los incumplimientos fiduciarios y por conflictos de intereses, la situación de TTI, Inc. se deterioró. También señalaron que en diciembre de 2001, los directores de Proactiva votaron para disolver y liquidar todos los activos de TTI, Inc., acción que alegadamente violó el “Acuerdo Marco”.
Surge de la reconvención que los peticionarios presentaron cinco causas de acción en contra de las recurridas. Ello, por éstas supuestamente haber incurrido en fraude por correo y por líneas telefónicas, conspiración, incumplimiento de contrato, difamación, incumplimiento del deber fiduciario, actuaciones ultra vires y fraude constructivo.
Luego de varias incidencias procesales, el 28 de junio de 2005 se celebró la vista argumentativa ante un Panel Arbitral compuesto por los licenciados Antonio J. Amadeo Murga, José Alberto Morales y Ángel Rossy García.
*786 El 23 de agosto de 2005, el Panel emitió el Laudo de Arbitraje. Determinó que no venía obligado a resolver conforme a derecho. De igual modo, declaró con lugar la causa de acción de las recurridas en lo atinente a la obligación de los peticionarios de resarcir las pérdidas incurridas en la operación y vida de la TTI, Inc. Fundamentó su decisión en el “Acuerdo Marco” suscrito por las partes, en el cual convinieron que las aportaciones y riesgos de pérdidas de la TTI, Inc. serían distribuidas en proporción a la tenencia de acciones. Resolvió que la implantación del “Proyecto Reserva” generó pérdidas, las cuales Proactiva satisfizo. En consecuencia, determinó que los peticionarios tendrían que pagar solidariamente ciertas sumas de dinero en calidad de reembolso de las mencionadas pérdidas. [6] Asimismo, dispuso que conforme al “Acuerdo Marco”, los peticionarios tenían que pagar $600,000 en especie o en servicio. Determinó que los peticionarios no aportaron dinero y que sólo rindieron el equivalente a $400,000 en especie o servicio. Por ello, resolvió que los peticionarios tenían que satisfacer el balance pendiente, es decir, $200,000.
De igual modo, condenó a los peticionarios al pago de las costas del arbitraje, incluyendo los honorarios de los árbitros y concedió los remedios libres de imposición de honorarios de abogado. Además, impuso los intereses legales a partir de la fecha de la notificación del laudo. También, desestimó toda otra reclamación de las recurridas, así como la reconvención de los peticionarios.
Insatisfechos con la aludida determinación, el 21 de septiembre de 2005, los peticionarios presentaron una solicitud de revisión judicial ante el TPI. En ésta solicitaron que se declarara nulo el mencionado laudo. Ello, porque éste alegadamente fue emitido fuera del período de treinta días establecido en el Artículo 14 de la Ley de Arbitraje de Puerto Rico, 32 L.P.R.A. sec.3214. En la alternativa, solicitaron al TPI que declarara nulo el laudo, pues los árbitros actuaron erróneamente al rehusar escuchar evidencia pertinente y material a la controversia. Además, alegaron que el laudo no se resolvió conforme a derecho, según establecido en el “Acuerdo Marco”.
Luego de que las recurridas presentaran alegato en oposición a la revisión, el 8 de marzo de 2006, el TPI emitió la sentencia recurrida en la cual confirmó el laudo.
Inconformes con dicho dictamen, oportunamente los peticionarios presentaron el recurso de epígrafe y señalaron que el TPI cometió los siguientes errores:

“Erró el Tribunal de Primera Instancia al concluir que “Independientemente de la ley específica que habría de gobernar los procedimientos de arbitraje, si la federal o la estatal, las partes en el presente caso acordaron en la cláusula de arbitraje que las reglas de procedimiento que utilizarían serían las de la AAA. ” Esto es, erró el Tribunal de Instancia al resolver que a este tipo de relación comercial le aplican las “International Mediation Rules ”, aunque en el Acuerdo Marco no se haya dispuesto específicamente para su aplicación.

Erró el Tribunal de Instancia al resolver que el Panel Arbitral cumplió con el debido proceso aunque no haya aceptado como partes en el pleito a ciertas personas o entidades no contratantes en el Acuerdo Marco.

Erró el Tribunal de Instancia al resolver que las partes no habían acordado que el laudo arbitral fuera conforme a derecho. ”

Por último, erró el Tribunal de Instancia al resolver que el Panel Arbitral tenía discreción para imponer costas de arbitraje.
Por su parte, las recurridas presentaron oportunamente su oposición a la petición de certiorari.
Con el beneficio de las comparecencias de las partes, resolvemos.
*787 II
El arbitraje es la alternativa más formal que existe a la adjudicación y litigio judicial. En este proceso, las partes en disputa someten y presentan su caso ante un tercero neutral que está investido con la facultad de rendir una decisión. D. Fernández Quiñones, El Arbitraje Obrero-Patronal, lera Edición, Ediciones Forum, 2000, págs. 21-23. Un laudo es aquella resolución que dicta un árbitro, al ajustar controversias entre las partes. El Tribunal Supremo'ha establecido que el arbitraje constituye el medio más adecuado para la resolución de los conflictos que surgen de la aplicación e interpretación de los convenios colectivos por ser un trámite rápido, cómodo, menos costoso y técnico. J.R.T. v. Hato Rey Psychiatric Hosp., 119 D.P.R. 62, 68 (1987); Pagan v. Fundación Hospital Dr. Pila, supra, a la pág. 68.
El arbitraje es un sustituto del litigio judicial en el sentido de que su fin es la adjudicación. Las partes están compelidas por su propio acuerdo a aceptar la decisión del árbitro como final y obligatoria. Fernández Quiñones, op. cit., pág. 21.
La autoridad del árbitro para entender en una controversia queda definida por la cláusula de arbitraje convenida, así como por el acuerdo de sumisión sometido por las partes y aquella autoridad que pueda ser conferida para confeccionar el remedio que corresponda. Se constituye, pues, dicho acuerdo, en definitorio de los asuntos a ser decididos y es lo que controla, junto con las disposiciones aplicables del convenio colectivo, el ámbito de autoridad del árbitro o panel de arbitraje seleccionado por las partes con tal finalidad. J.R.T. v. Corp. Crédito Agrícola, 124 D.P.R. 846, 850 (1989).
El Tribunal Supremo ha establecido las pautas sobre la doctrina de la revisión judicial en los laudos de arbitraje. Ha expresado que las normas pautadas en torno a la revisión judicial de laudos de arbitraje se han caracterizado por una marcada deferencia hacia éstos. En J.R.T. v. Corp. Crédito Agrícola, supra, a la pág. 849, se estableció lo siguiente sobre el alcance de la revisión judicial de un laudo de arbitraje:

“La trayectoria de nuestras decisiones en materia de arbitraje obrero-patronal se caracteriza por una marcada deferencia hacia los laudos de arbitraje. En consonancia con este principio, hemos reiterado que un laudo fundamentado en la sumisión voluntaria de las partes está sujeto a revisión judicial sólo si las partes convienen en que la controversia sometida al árbitro sea resuelta conforme a derecho. En ausencia de disposición expresa a esos efectos, un laudo sólo puede ser impugnado si se demuestra la existencia de fraude, conducta impropia del árbitro, falta del debido proceso de ley, ausencia de jurisdicción, omisión en resolver todas las cuestiones en controversia que se sometieron o que el mismo resulte contrario a la política pública. ”

La regla general vigente en nuestra jurisdicción establece que la determinación a que se llegue tras un proceso de arbitraje merece un alto grado de deferencia por parte de los tribunales. Condado Plaza v. Asoc. Empleados de Casino, supra, a la pág. 352. Es norma establecida que un laudo de arbitraje será final y los tribunales no deben sustituir el criterio del árbitro por el suyo. J.R.T. v. National Packing Co., supra, a la pág. 165; U.I.L. de Ponce v. Destilería Serrallés, Inc. supra, a la pág. 354.
La intervención judicial en la revisión de los laudos de arbitraje se justifica cuando las partes sometan el asunto al árbitro para que sea resuelto conforme a derecho. Ésta es la excepción de la política judicial de auto restricción para la revisión de laudos de arbitraje. Este pacto deberá surgir del convenio colectivo o del acuerdo de sumisión. Ello implica que ambas partes pueden recurrir ante el foro judicial para impugnarlo y revisar su corrección y validez jurídica. J.R.T. v. Hato Rey Psychiatric Hospital, supra, a la pág. 68. Hasta entonces, el tribunal quedará facultado para revocar un laudo si el árbitro erró en la aplicación del derecho. U.I.L. de Ponce v. Destilería Serrallés, Inc. supra, a la pág. 353.
Cuando las partes expresen en el convenio colectivo o en el acuerdo de sumisión que el laudo deberá ser emitido conforme a derecho, “los árbitros deben seguir las reglas de derecho y rendir sus laudos a tenor con las *788 doctrinas legales prevalecientes. Si el convenio de arbitraje nada dice en cuanto a esto, de conformidad con la Ley Común y bajo la mayoría de las leyes de arbitraje, los árbitros pueden declarar cuál es la ley, y ningún laudo será anulado a causa de sus errores de derecho. ” Junta de Relaciones del Trabajo v. N. Y. & Puerto Rico Steamship Co., 69 D.P.R. 782, 802 (1949).
Lo anterior no quiere decir que se haya alterado la norma de autorestricción de los tribunales al ejercer su función revisora sobre los árbitros. Cuando se ha dispuesto, mediante un acuerdo de sumisión o mediante un convenio colectivo, que el laudo tiene que ser conforme a derecho, los tribunales pueden, no solamente revisar los laudos por las causales tradicionales, sino que también pueden considerar cualquier error de derecho sustantivo que se haya cometido en la aplicación del derecho laboral. U.I.L. de Ponce v. Destilería Serrallés, supra, a la pág. 353. Sin embargo, aun en casos donde se permite revisar la validez jurídica del laudo, los tribunales no deben inclinarse fácilmente a invalidarlos a menos que sea evidente que no fueron resueltos conforme a derecho. No es suficiente para ello una discrepancia de criterio con lo expuesto en el laudo. Rivera v. Samaritano & Corp., 108 D.P.R. 604, 609 (1979). Se ha resuelto que no es motivo para revisar, cambiar, modificar o variar un laudo y sus determinaciones de hechos, la sola alegación de apreciación y evaluación errónea de la evidencia.
De igual modo, los tribunales no deben sustituir el criterio del árbitro, aun bajo la hipótesis de que hubiese provisto un remedio distinto de haberse sometido la controversia al foro judicial. S.I.U. de P.R. v. Otis Elevator Co., 105 D.P.R. 832, 838 (1977). Las discrepancias de criterio entre el árbitro y el Tribunal de Primera Instancia no justifican la intervención de este último con el laudo, aun cuando éste deba dictarse “conforme a derecho”, ya que si así fuera, se socavarían “los propósitos fundamentales del arbitraje de resolver las controversias rápidamente sin los costos y demoras del proceso judicial. ” Rivera v. Samaritano & Co., supra, a la pág. 609.
A tono con lo anterior, se ha resuelto reiteradamente que un laudo de arbitraje goza de una naturaleza similar a la de una sentencia o decreto judicial y que la función del árbitro es análoga a la de un Tribunal de Primera Instancia, estando el foro apelativo facultado para revisar los planteamientos al respecto. U.G.T. v. Challenger Caribbean Corp., 126 D.P.R. 22, 29-30 (1990); U.I.L. de Ponce v. Destilería Serrallés Inc., supra, a la pág. 354. Es decir, que los laudos de arbitraje son revisables ante los tribunales de manera análoga al procedimiento dispuesto para la revisión de agencias administrativas, las cuales gozan de gran deferencia por parte de los tribunales. U.G.T. v. Challenger Caribbean Corp., supra, a la pág. 30.
No se trata de relitigar la controversia en un proceso civil ordinario, lo que convertiría la labor del árbitro en un ejercicio inútil y desvirtuaría la naturaleza del procedimiento de arbitraje laboral. Queda claro que la función del tribunal no es la de emitir un juicio de novo sobre los méritos de la controversia, sino la de pasar juicio sobre la corrección de lo decidido por el árbitro, confiriendo al laudo una presunción de corrección similar a la que se le atribuye a cualquier sentencia o resolución administrativa. U.I.L. de Ponce v. Destilería Serrallés Inc., supra, a las págs. 354-355.
De otra parte, con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que nos son planteados mediante el recurso de certiorari, la Regla 40 del Reglamento de este Tribunal, promulgado por el Tribunal Supremo el 20 de julio de 2004, señala los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de certiorari. La referida regla dispone lo siguiente:

“El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

*789
(B) Si la situación de hechos planteada es la mas indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

. (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. ”

III
En resumen, los peticionarios argumentan en su primer señalamiento que erró el TPI al resolver que aplicaban las “International Mediation Rules” aunque en el “Acuerdo Marco” no hubo tal disposición. Además, aducen que el laudo arbitral no tuvo efecto legal, toda vez que éste fue emitido fuera del término de treinta días que dispone la Ley de Arbitraje de Puerto Rico, 32 L.P.R.A. 3214.
Una lectura del “Acuerdo Marco” refleja que la décimo segunda cláusula establece que dicho contrato se regiría por las leyes de Puerto Rico. Asimismo, expresa que tendrían que remitirse al Artículo 11.1 del “Stockholders Agreement”, si surgiera algún conflicto entre las partes en la aplicación o interpretación del contrato. El mencionado artículo establece que cualquier disputa entre las partes se resolvería mediante el arbitraje. Asimismo, se estipuló que las reglas procesales a utilizarse serían las de la “American Arbitration Association”'. ■ - . . • •
Sobre dicho asunto, el TPI concluyó que las partes tenían una relación comercial internacional por lo que aplicaban las reglas internacionales de arbitraje. Resolvió que conforme a dichas reglas, no existe un término específico para la emisión de un laudo, aunque se establece que la controversia debe resolverse con prontitud. Además, indicó que en el caso de epígrafe, el 28 de junio de 2005 se celebró la vista final adjudicativa y el Panel Arbitral emitió el laudo el 23 de agosto de 2005, lo cual no representó una dilación irrazonable.
Nuestro Tribunal Supremo no se ha expresado específicamente sobre la tardanza en la emisión de los laudos de arbitraje. Aún así encontramos que en Junta de Relaciones del Trabajo v. Corona Brewing Corp., 83 D.P.R. 40 (1961), nuestro más Alto Foro determinó que en una controversia sometida a arbitraje las partes pueden prorrogar el término de su adjudicación. Además, en la jurisdicción federal, a la cual acudimos en ausencia de interpretación expresa en esta jurisdicción, se ha resuelto que las limitaciones en cuanto al tiempo de emisión de un laudo son de naturaleza directiva, por lo que un Tribunal tiene la discreción de mantener la determinación arbitral aunque ésta se haya emitido tardíamente. Asimismo, se ha determinado que una parte afectada no debe objetar la tardanza en la emisión de un laudo después que éste sea emitido. De igual modo, se ha resuelto que un peticionario debe demostrar que la tardanza le causó algún daño real. West Rock Lodge No. 2120 v. Geometric Tool Co, 406 F.2d 284 (1968); Local Union 560, Int. Bro. of Team v. Anchor Motor FRGT., Inc., 415 F.2d 220 (1969).
En el caso de autos, los peticionarios tuvieron la oportunidad de objetar un laudo tardío antes de que éste se emitiera, gestión que no llevaron a cabo. Además, no demostraron que la aludida tardanza les causara algún perjuicio o menoscabo. Asimismo, coincidimos con la determinación del foro de instancia en cuanto a que el laudo fue resuelto prontamente a pesar de la complejidad de la controversia planteada.
*790 Por otro lado, en su segundo señalamiento, los peticionarios arguyen que el TPI erró al resolver que el Panel Arbitral cumplió con el debido proceso de ley aunque no aceptó que se incluyeran ciertas personas y entidades como partes indispensables. En ese tenor, el Panel, en su discreción, entendió que el caso se encontraba listo con la prueba necesaria para su dilucidación, toda vez que no estaba obligado a incluir a partes que no firmaron el “Acuerdo Marco”. Además, surge del laudo arbitral que tanto las recurridas como el peticionario presentaron amplia evidencia testifical.
De otra parte, en su tercer señalamiento, los peticionarios argumentan que incidió el TPI al resolver que las partes no habían acordado que el laudo arbitral fuera conforme a derecho. No hallamos documento o estipulación que obligara al Panel Arbitral a resolver conforme a derecho. Por el contrario, el referido Panel tenía que resolver al tenor de lo convenido en el “Acuerdo Marco”. Por último, en el cuarto señalamiento, los peticionarios adujeron que el TPI erró al resolver que el Panel Arbitral tenía discreción para imponer costas de arbitraje. Consta en el Artículo XI del “Stockholders Agreement” la siguiente disposición:

“[e]ach party shall pay its own expenses concerning the arbitration, including one-half of any fee payable in advance to the arbitrators, subject to the condition that the arbitrators shall determine how the cost of the arbitration should be borne between them. ” 

A tenor con lo estipulado, no existía prohibición alguna para que el Panel de Arbitros, en el ejercicio de su discreción, impusiera a la parte perdidosa el pago de las costas del arbitraje.
En virtud de lo anteriormente esbozado, no encontramos que la determinación del TPI sea contraria a derecho o que se emitiera mediando prejuicio, parcialidad o error. Conforme a ello, no vemos motivo alguno para intervenir con la sentencia emitida por el TPI, que confirmó el laudo impugnado por los peticionarios. Así pues, resolvemos que el certiorari de epígrafe no plantea una situación de las comprendidas dentro de los criterios de la Regla 40 de nuestro Reglamento a los fines de expedir el auto solicitado. Además, recordemos que es doctrina reiterada en nuestra jurisdicción que la revisión de laudos de arbitraje por los tribunales es una de carácter limitada.
IV
Por los fundamentos expresados, se deniega la expedición del auto de certiorari solicitado.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones
ESCOLIOS 2007 DTA 19
1. Notificada el 29 de igual mes y año.
2. Expresaron que Proactiva era una sociedad organizada bajo los estatutos de España.
3. Expusieron que Vivendi S.A. era una corporación multinacional francesa que alegadamente controlaba las acciones de Proactiva.
4. Sostuvieron que FCC era una sociedad española con acciones mayoritarias en Proactiva.
5. El 15 de diciembre de 2003, las recurridas, a través de una Moción en Cumplimiento de Orden, expresaron su posición en cuanto a la insistencia de los peticionarios de incluir en el procedimiento de arbitraje a las partes no firmantes del “Acuerdo Marco”. Posteriormente, los peticionarios replicaron a dicha moción. En resolución emitida el 3 de febrero de 2004, el Panel *791 Arbitral declaró sin lugar la inclusión en el pleito de la FCC, Vivendi/FCC, los señores Carlos Aguasca, Ángel Arias, Javier Gil Cáceres, Fernando Pina y Stephan Orssich, por razón de que éstos no fueron partes del acuerdo de arbitraje. Así pues, resolvió que el Tribunal Arbitral únicamente escucharía las reclamaciones entre las partes que firmaron el acuerdo de arbitraje.
6. Las sumas a reembolsar serían por los siguientes conceptos: a.) el 30% de $8,453,312.84 correspondiente al préstamo que saldó Proactiva con el Banco Santander; es decir, la cantidad de $2,535,993.80; b.) el 30% de $1,450,000 correspondiente a un préstamo que Proactiva concedió a TTI para gastos operacionales, es decir, la cantidad de $435,000; y c.) el 30% de $150,000 por concepto de préstamos adicionales aportados por Proactiva a TTI, es decir, la suma de $45,000.
7. Las recurridas comparecieron inicialmente mediante sendas mociones en las que indicaron que los peticionarios erróneamente presentaron un recurso de apelación en lugar de un certiorari, mecanismo apropiado para que un Tribunal de Apelaciones pueda revisar las sentencias finales dictadas en laudos de arbitraje por el TPI. Así pues, solicitaron la desestimación del recurso, o en la alternativa, que no se expidiera el recurso de certiorari. De otra parte, informaron que habían presentado ante el TPI una moción en la que solicitaron enmienda nunc pro tunc a los únicos fines de corregir la utilización de la palabra “mediación” en el título del cuerpo de reglas citadas en la sentencia para que se sustituyera por la palabra “arbitraje”. Posteriormente, el 7 de junio de 2006 mediante Moción Informativa, las recurridas advirtieron que el TPI dictó una sentencia enmendada el 20 de mayo de 2006 en la que indica que la sentencia que dictó el 8 de marzo de 2006 permanecería igual excepto por el error en la página 4 en la cual se refirió a “International Mediation Rules” en lugar de “International Arbitration Rules”.
8.4 L.P.R.A. Ap. XXII-B.
9. Precisa señalar que el 20 de mayo de 2006, el TPI emitió una Sentencia Enmendada Nunc Pro Tune en la cual determinó que erró al referirse a las “International Mediation Rules” en lugar de las “International Arbitration Rules”. Por tal motivo, el TPI dictó la mencionada sentencia para corregir dicho error.
10. Apéndice del recurso, pág. 64.