IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| City of Pittsburgh, | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 415 C.D. 2024 |
| | : | Argued: February 4, 2025 |
| Fraternal Order of Police, Fort Pitt | : | |
| Lodge No. 1 (Dalton Dailey, | : | |
| Grievant) | : | |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
            HONORABLE STACY WALLACE, Judge (P.)
            HONORABLE MATTHEW S. WOLF, Judge

OPINION BY
PRESIDENT JUDGE COHN JUBELIRER            FILED: March 17, 2025

The City of Pittsburgh (City) appeals from the March 21, 2024 Order of the Court of Common Pleas of Allegheny County (trial court) denying the City's statutory appeal and affirming the July 12, 2023 Award of an arbitration panel in favor of Officer Dalton Dailey (Grievant) pursuant to the Policemen and Firemen Collective Bargaining Act, Act of June 24, 1968, P.L. 237, No. 111, *as amended*, 43 P.S. §§ 217.1-217.12, commonly known as Act 111.[1]

As discussed more fully below, although the Award in this case was issued beyond the 10-day period specified in the parties' collective bargaining agreement

---

[1] Section 1 of Act 111 provides:

> Police or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall . . . have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of [Act 111].

43 P.S. § 217.1.

(CBA), because the CBA does not contain unequivocal language providing for automatic invalidation of an untimely award, and because the City neither objected to the delay before filing its statutory appeal nor alleged any harm from the delay, we decline to invalidate the Award on that basis. We also conclude that the substantial evidence standard in Section 754(b) of the Local Agency Law, 42 Pa.C.S. § 754(b), is inapplicable where an employee who is protected by a CBA elects to grieve a disciplinary dispute thereunder. Further, because the City does not set forth the elements of a violation of the Contract Clause in article I, section 17 the Pennsylvania Constitution, PA. CONST. art. I, § 17, we are not persuaded by the City's as-applied constitutional challenge to the Award. Finally, we conclude that because the CBA in this case does not define "just cause," the arbitrators had jurisdiction to interpret "just cause" and did not exceed their authority in reducing Grievant's discipline. Accordingly, we affirm the trial court's Order.

## I. **Background**

Fraternal Order of Police, Fort Pitt Lodge No. 1 (Union), is the exclusive bargaining representative of all police officers in the City's Bureau of Police (Bureau) below the rank of Commander. The City and the Union are parties to a CBA governing the terms and conditions of employment of Bureau officers, including Grievant. The CBA at issue in this appeal was in place from January 1, 2019, to December 31, 2022. (Reproduced Record (R.R.) at 300a.) The CBA incorporates the disciplinary provisions of the Policemen's Civil Service Act (PCSA), Act of August 10, 1951, P.L. 1189, *as amended*, 53 P.S. §§ 23531-23540. (*Id.* at 318a.) Relevant to this appeal, Section 9.1(a) of the PCSA provides: "No employe in the competitive or non-competitive class in the bureau of police . . . shall be removed, discharged, suspended, demoted or placed on probation, **except for just**

2

**cause which shall not be religious or political**." 53 P.S. § 23539.1(a) (emphasis added).[2]

The facts concerning Grievant's infraction are largely undisputed. During morning roll call on October 28, 2022, between 6:15 a.m. and 6:25 a.m., Sergeant Michael Burford ordered Grievant and his partner, Officer Thomas Potts, to report to a funeral detail due to concerns of retaliation in response to a gang-related shooting that occurred two weeks earlier. The funeral service was for one of the victims of that shooting and was scheduled to take place at 11:00 a.m. at a church on Brighton Road in the City. Before the roll call was complete, Grievant and Officer Potts left the station to respond to a robbery in progress because they were the only two-officer car on the shift.[3] Thereafter, Grievant and Officer Potts continued patrolling their assigned zone and responded to at least one other service call.

Just before 10:00 a.m., Grievant and Officer Potts drove to a uniform store on Neville Island, which is located a few miles outside of the City.[4] While Grievant and Officer Potts were en route to the uniform store, Sergeant Burford radioed Grievant and asked him to return to the station to complete internal paperwork known as a "special" explaining why Grievant had missed a court appearance the day before.[5]

---

[2] Section 9.1 of the PCSA was added by Section 4 of the Act of March 20, 1990, P.L. 78.

[3] A two-officer car is also referred to as a "3111 car." (R.R. at 107a.)

[4] Sergeant Burford testified that he was unaware that Grievant and Officer Potts were planning to leave their assigned zone to travel to the uniform store on Neville Island that morning. However, Sergeant Burford recalled that Grievant had requested permission to go to the uniform store **the day before**, and Sergeant Burford replied that Grievant could possibly go early the following day. (R.R. at 108a.)

[5] The arbitrators summarized Grievant's testimony regarding these events as follows:

**(Footnote continued on next page…)**

3

Grievant and Officer Potts returned to the station at approximately 10:20 a.m. When they returned, Sergeant Burford questioned the officers about leaving their assigned zone while on duty and instructed them not to drive to Neville Island in the future because it is too far from their zone. The following events then transpired:

> [Sergeant Burford] instructed the Grievant to provide a short statement as to why he missed a court date. Sergeant Burford viewed the missed court date as merely . . . a miscommunication and did not consider any possible disciplinary action. In addition to reviewing the Grievant's [s]pecial, [Sergeant] Burford reviewed drafts of an email that the Grievant was going to send to the [c]ourt explaining his absence. [Sergeant Burford] recalled that at approximately 12:10 p.m., the Grievant approached him and asked . . . him to review the final version of the [s]pecial. [Sergeant Burford] testified that at that time, he believed that the Grievant and Officer Potts had already returned from the funeral detail.

(R.R. at 108a-09a.)

Grievant and Officer Potts did not report to the funeral detail. After the funeral service, at 12:03 p.m., two gunmen opened fire on a crowd of attendees standing outside the church, wounding five people.[6] Video surveillance showed that the gunmen had canvassed the area around the church for 30-45 minutes before the shooting.

> [Grievant] recalled that during roll call on October 28, 2022, there was a very short communication with [Sergeant] Burford regarding the funeral detail. It was [Grievant's] understanding that the detail was to be at the O'Dell Funeral Home at 10:00 a.m. with further details to be provided. The Grievant recalled responding to two calls that morning and then proceeding to the uniform store on Neville Island. In the store, [Grievant] telephoned [Sergeant] Burford, who instructed him to return to the Zone 1 [s]tation to complete a [s]pecial regarding a missed court date the day before. The Grievant testified that he understood this directive to supersede the earlier assignment to attend the funeral detail.

(R.R. at 110a-11a.)

[6] The officers were notified of the shooting via a "ShotSpotter" alert received at the police station at 12:03 p.m. on October 28, 2022. (R.R. at 6a.)

4

Following an internal investigation, on November 9, 2022, the City issued a Disciplinary Action Report to Grievant, citing four violations of the Bureau's rules of conduct and recommending that he be suspended pending termination. Grievant was charged with the following violations: failure to notify dispatch; conduct unbecoming a member; insubordination; and neglect of duty.

After a hearing, the City imposed a five-day suspension for Grievant's failure to report to the funeral assignment. The Union filed a grievance, which proceeded to arbitration. The arbitration panel was comprised of one neutral arbitrator, Jane DeSimone, and two partial arbitrators: Juan Rivera, selected by the City, and Robert Swartzwelder, selected by the Union.

The arbitrators held a bifurcated, two-day hearing on May 16, 2023, and June 15, 2023. On July 12, 2023, a majority of the arbitrators issued an Award sustaining the grievance in part and denying it in part, concluding that "[t]he record . . . evidence supports a single charge of [n]eglect of [d]uty . . . for the Grievant's failure to clarify conflicting orders given to him on October 28, 2022." (R.R. at 100a.) The majority found that the evidence did not support the charges of insubordination, conduct unbecoming a member, or failure to notify dispatch. (*Id.* at 100a, 115a.) The majority reduced Grievant's suspension to an oral reprimand and directed that he "be made whole for all lost pay and benefits." (*Id.* at 101a-02a.)

The Award was authored by Arbitrator DeSimone and was joined by Arbitrator Swartzwelder. Arbitrator Rivera dissented and wrote a brief dissenting statement.[7] Arbitrator DeSimone signed the Award on June 22, 2023. Arbitrator

---

[7] In his dissent, Arbitrator Rivera stated:

I respectfully dissent from the Majority's Award because the Majority did not apply the proper definition of just cause under the [CBA's] Section 4, Subsection B. (Just

**(Footnote continued on next page…)**

Swartzwelder signed the award, noting his concurrence, on July 12, 2023. Arbitrator Rivera also signed the award, noting his dissent, but did not date the Award. (*Id.* at 101a-02a.)

On September 7, 2023, at the City's request, Arbitrator DeSimone issued an opinion in support of the Award (Opinion). Arbitrator DeSimone began her analysis by noting:

> There is little dispute that the Grievant received two separate orders that morning – the order to attend the funeral detail and the order to return to the [s]tation to complete a [s]pecial explaining his [c]ourt absence the day before. The Grievant complied with the order to complete the [s]pecial, but not the order to attend the funeral detail. There also is no dispute that [Grievant] left Zone 1 in order to go to a uniform store without informing dispatch. The sum of these actions resulted in the four charges for which he was issued a 5-[d]ay [s]uspension.

(*Id.* at 114a.)

Arbitrator DeSimone ultimately concluded:

> **With all of the evidence presented, a consistent picture emerges in which funeral details, such as the one on October 28, 2022, were not given sufficient priority prior to the tragedy.** Realizing this shortcoming after the shooting, the City implemented a written policy by which a detailed risk assessment is now conducted, and appropriate actions taken. As such, the evidence fully supports that the failure to prioritize funeral details was a systemic problem that did not rest upon the Grievant's shoulders. This was not a case where the Grievant strayed from established policy. **Nevertheless, the Grievant was responsible for clarifying the two orders given to him – to attend the funeral detail and to return to the [s]tation to complete**

cause as defined by the [p]arties' [CBA] under the [PCSA].) Therefore, by failing to apply the [CBA] and by applying the wrong standard, the Majority erred. The record supports [sic] substantial evidence to support the charges and penalty. Lastly, by finding that [Grievant] neglected his duties because he failed to "clarify conflicting orders[,]"[] the Majority adds a charge not within the Disciplinary Action Report.

(R.R. at 103a.)

6

**a [s]pecial. His failure to do so warranted the single charge of [n]eglect of [d]uty**. The evidence does not support the additional charges of [c]onduct [u]nbecoming a [member] and [i]nsubordination.

. . . Grievant is a seven-year employee with no prior disciplinary record. His police work is well regarded as evidenced by his work history and assignment to the 3111 car. In light of this record and the systemic problem subsequently addressed by the City, it is concluded that **the Grievant's failure to clarify the orders given to him on October 28, 2022 support[s] only the single charge of [n]eglect of [d]uty for which a[n] oral reprimand is the fully corrective disciplinary response**.

(*Id.* at 115a (emphasis added).)

On October 10, 2023, the City filed a statutory appeal with the trial court seeking to vacate the Award. The City subsequently filed a Motion for Leave to Amend Statutory Appeal, which the trial court granted. On January 24, 2024, the City filed an amended statutory appeal.

In its amended statutory appeal, the City argued that "the tripartite arbitration panel . . . did not issue a 'final' determination as required by [Section 7] of Act 111," 43 P.S. § 217.7, because the panel executed the Award beyond the 10-day time limit in the CBA and, therefore, the Award was a nullity. (R.R. at 25a, 29a-30a.) The City also argued that the arbitrators exceeded their jurisdiction and powers by ignoring the parties' agreed-upon standard for just cause in the CBA. (*Id.* at 28a-29a.) Finally, the City argued that Arbitrator DeSimone "did not afford the City a full and fair hearing where she decided that the City did not meet its burden to prove 'just cause' by substantial evidence in reliance upon . . . rules that were implemented after the discipline imposed." (*Id.* at 28a.)[8]

---

[8] In its supporting brief filed with the trial court, the City changed its constitutional claim to an as-applied constitutional challenge to the Award, which is the only constitutional issue addressed by the trial court in its Pennsylvania Rule of Appellate Procedure 1925(a) Opinion and raised before this Court.

On March 21, 2024, the trial court denied the City's statutory appeal and affirmed the Award. (*Id.* at 23a.) In its subsequent Pennsylvania Rule of Appellate Procedure 1925(a) Opinion, the trial court first addressed the validity and timeliness of the Award, concluding as follows:

> The parties' [CBA] provides that regarding a grievance arbitration award, "[t]he [t]ripartite board's decision shall be issued in writing within 10 calendar days of the hearing . . . ." The final day of the arbitration hearing was held on June 15, 2023, [and] the neutral arbitrator signed the award on June 22, 2023; however, it was not signed by the [Union] and City arbitrators until July 12, 202[3]. **Although the CB[A] does address the timeframe for issuing an award in grievance arbitration, it does not provide that an untimely award is invalid[,] nor does it otherwise address the consequence of an award that is issued "late." Further, the City fails to provide any case law creating a standard at common law that would invalidate an untimely grievance award. Finally, the City fails to offer any evidence that it was prejudiced by this short delay**, and indeed was able to timely appeal the arbitration award.

(*Id.* at 7a (emphasis added).) Therefore, the trial court concluded that the Award was valid and not a nullity.

Second, with regard to the arbitrators' application of the just cause standard, the trial court concluded:

> [Section 9.1(a) of the PCSA, 53 P.S. § 23539.1(a),] simply provides that discipline may be imposed for just cause, "which shall not be religious or political." An arbitrator has "jurisdiction to adjudicate the class of disputes arising out of a CBA between a public employer and its firefighters or police employees, rationally related to the terms and conditions of their employment." **Here, the issue of officer discipline arises directly out of the CBA, as Section 5(B)(3) [of the CBA] specifically provides that an officer "may elect to grieve any such disciplinary action to arbitration." Therefore, the arbitration panel had the jurisdiction to interpret "just cause" as contemplated by the CBA and make a factual determination if just cause for the discipline imposed existed** . . . .

(*Id.* at 8a (internal citation omitted) (emphasis added).)

8

Next, the trial court rejected the City's contention that the trial court was required to review the Award under a substantial evidence standard. Rather, the trial court determined that it was bound by Act 111, "which provide[s] that when an appeal from an arbitration award falls within narrow certiorari and the question involves fact-finding or an interpretation of the CBA, the standard of 'extreme deference' to the arbitrator's award applies." (*Id.* at 9a (citation omitted).) Finally, the trial court rejected the City's as-applied constitutional challenge because it found that the "[A]ward did not violate the [p]arties' CBA." (*Id.*)

## II. Issues

Before this Court, the City asserts that the Award is a nullity because it was untimely executed; the trial court applied the incorrect standard in reviewing the Award; the arbitrators exceeded their jurisdiction and powers; and the Award is unconstitutional as applied to the City.[9]

## III. Analysis

"[J]udicial review of any Act 111 arbitration award, whether an interest or grievance award, is limited to narrow certiorari." *City of Pittsburgh v. Fraternal Ord. of Police, Fort Pitt Lodge No. 1*, 111 A.3d 794, 800 (Pa. Cmwlth. 2015). This means that a court may consider only four issues relating to an Act 111 award: (1) the arbitrator's jurisdiction; (2) the regularity of the proceedings; (3) whether the arbitrator exceeded his or her powers; and (4) whether there was a deprivation of constitutional rights. *Pa. State Police v. Pa. State Troopers' Ass'n (Betancourt)*, 656 A.2d 83, 90 (Pa. 1995). If an arbitration award cannot be vacated on one of these bases, then it must be upheld. *Id.* A mere error of law is insufficient to support

---

[9] We have re-ordered the City's issues on appeal.

the reversal of an Act 111 award. *In re Appeal of Upper Providence Police Del. Cnty. Lodge #27 Fraternal Ord. of Police*, 526 A.2d 315, 322 (Pa. 1987). Moreover,

> as long as an arbitrator's award concerns terms and conditions of employment and does not require performance of an illegal act, or one that a party could not do voluntarily, the "authority" prong of narrow certiorari is "generally met." An argument that an arbitrator misinterpreted a CBA is not within the confines of the narrow certiorari review. This Court's scope of review is a "plenary, non-deferential standard where the resolution of the issues turns on a question of law or application of law to undisputed facts."

*Borough of State College v. Borough of State Coll. Police Ass'n*, 303 A.3d 248, 255 (Pa. Cmwlth. 2023) (citations omitted).

### A. Validity of Award

The City first asserts that the Award is a nullity because it was not fully executed within 10 days after the close of the hearing as required by the parties' CBA. The arbitration hearing concluded on June 15, 2023, so the CBA required the arbitrators to issue the Award within 10 days of that date. However, the Award was not executed by a majority of the arbitrators until July 12, 2023. (*See* R.R. at 101a-02a.) Therefore, the City contends that we must invalidate the Award as a breach of the parties' CBA.

We begin by reviewing the applicable statutory and contractual provisions governing the requirements for a grievance arbitration award. Section 7(a) of Act 111 provides in relevant part:

> **The determination of the majority of the board of arbitration thus established shall be final** on the issue or issues in dispute and shall be binding upon the public employer and the policemen or firemen involved. **Such determination shall be in writing and a copy thereof shall be forwarded to both parties to the dispute.**

10

43 P.S. § 217.7(a) (emphasis added). Regarding the issuance of an award, Section 4(b) of Act 111 provides that "[t]he board of arbitration thus established shall commence the arbitration proceedings within ten days after the third arbitrator is selected and shall make its determination within thirty days after the appointment of the third arbitrator." *Id.* § 217.4(b). However, the parties' CBA provides for an expedited time period for the issuance of an award, stating: "The tripartite [arbitration panel's] decision **shall be issued in writing within ten (10) calendar days of the hearing,** and a supporting opinion, if one is requested by either party, shall be issued within thirty (30) calendar days of the close of the record." (R.R. at 393a (emphasis added).)

The issue before this Court is whether the arbitrators' issuance of the Award beyond the agreed-upon timeframe in the parties' CBA automatically nullifies the Award. We have found no Pennsylvania appellate case addressing this particular question, nor has the City cited any.[10] Given the dearth of Pennsylvania law, the

---

[10] The City cites *Goeller v. Liberty Mutual Insurance Co.*, 568 A.2d 176 (Pa. 1990), for the principle that "arbitrators must comply with statutory and contractual formalities in executing an arbitration award" or the award will be deemed "a nullity." (City's Br. at 27-28; *see* City's Reply Br. at 2-3.) *Goeller*, however, is factually distinguishable from this case. In *Goeller*, the Supreme Court held that an arbitration award bearing the signature of only one arbitrator was a nullity because the applicable arbitration statute required the signature of a majority of the panel. Here, the award was signed by all three arbitrators, albeit at different times. Importantly, *Goeller* did not involve an award issued beyond the time specified in a CBA.

In its reply brief, the City also cites *Johnson v. Crawford*, 212 Pa. 502 (Pa. 1905), but that case is also distinguishable. In *Johnson*, the parties' arbitration agreement stated that all matters in controversy shall be submitted to a panel of arbitrators within 60 days, but the matter was not submitted to arbitration until five months later due to the incapacity of one of the original arbitrators. Before the hearing, the defendants filed a petition asserting that because "the time within which the arbitrators should have proceeded to hear this case, under the terms of the agreement, has long since expired, and as there might now be some question concerning the validity of their award," the defendants "decline[d] to proceed" with the arbitration. *Id.* at 505. The trial court agreed and ordered that the arbitration agreement had expired by its own terms and **(Footnote continued on next page…)**

11

Union points to several federal court decisions that have addressed this issue. Thus, we will look to federal case law for guidance on this issue as persuasive authority.

Our research reveals that federal courts have been reluctant to invalidate an arbitration award merely because it was issued beyond the agreed-upon deadline set forth in a CBA. For example, in *West Rock Lodge No. 2120, International Association of Machinists and Aerospace Workers, AFL-CIO v. Geometric Tool Co.*, 406 F.2d 284 (2d Cir. 1968), the United States Court of Appeals for the Second Circuit concluded that the district court erred in invalidating a late arbitration award where the union failed to object to the delay until after the award was issued and made no showing of any harm caused by delay. The Second Circuit concluded:

> [W]e ought not to accept an arbitration rule which encourages post[-]award technical objections by a losing party as a means of avoiding an adverse arbitration decision. Rather, we believe it to be a better rule that any limitation upon the time in which an arbitrator can render his award be a directory limitation, not a mandatory one, and that **it should always be within a court's discretion to uphold a late award if no objection to the delay has been made prior to the rendition of the award or there is no showing that actual harm to the losing party was caused by the delay.**

*Id.* at 286 (emphasis added). Although *West Rock Lodge* involved interpretation of a statutorily imposed deadline for issuance of an award, rather than one imposed by

---

"all proceedings thereunder shall be vacated and set aside." *Id.* The Supreme Court affirmed, holding that "the [arbitrators'] failure to comply with the stipulation requiring the case to be submitted within the time designated in the agreement is fatal to any proceedings taken thereafter." *Id.* In other words, if the arbitrators fail to convene within the agreed-upon time, they are divested of authority to consider the matter and any resultant "award is of no validity and will be set aside." *Id.* Unlike this case, the arbitrators in *Johnson* never convened and never issued an award. Here, the parties' CBA does not specify a time in which the arbitrators must convene, (*see* R.R. at 393a), but Act 111 provides that the hearing must commence "within ten days after the third arbitrator is selected." 43 P.S. § 217.4(b). There is no allegation that the arbitrators in this case convened beyond the statutory period, only that the Award was issued late under the CBA, which was not the issue in *Johnson*.

Accordingly, neither *Goeller* nor *Johnson* sheds light on the legal question before us.

12

contract, the Second Circuit relied on "two district court decisions [that] held that a **failure to object prior to the handing down of an arbitration award constituted a waiver of the right to contest the decision on the ground that it had not been rendered within the period agreed upon by the parties in their [CBA]**." *Id.* (citing *Highway Truck Drivers v. Acme Mkts.*, 65 L.R.R.M. 2708 (E.D. Pa. 1967); *Dist. Lodge 71, Int'l Ass'n of Machinists v. Bendix Corp.*, 218 F. Supp. 742 (W.D. Mo. 1963)) (emphasis added); *see also Jones v. St. Louis-San Francisco Ry. Co.*, 728 F.2d 257, 265-66 (6th Cir. 1984) ("[A] court should always have the discretion to uphold a late award **when no objection to the delay has been made prior to the rendition of the award or there is no showing that harm was caused by the delay**.") (emphasis added).

In *Local Union 560, International Brotherhood of Teamsters v. Anchor Motor Freight, Inc.*, 415 F.2d 220 (3d Cir. 1969), the United States Court of Appeals for the Third Circuit refused to invalidate an arbitration award issued seven-and-one-half months late because the objecting party failed to establish prejudice. The Third Circuit held that under the terms of the parties' CBA, "the expiration of the thirty-day period [for issuing an award] did not of itself terminate the authority of the arbitrator or automatically invalidate a late award." *Id.* at 224. Furthermore, the Third Circuit emphasized that "if the parties intend to provide for the automatic invalidation of a late award[,] **they must say so in unequivocal language**" in the contract. *Id.* at 226 (emphasis added). If the contract does not so provide, then "the authority of the arbitrator will expire after a reasonable time beyond the period originally fixed for the award has gone by." *Id.*; *accord N.J. Reg'l Council of Carpenters v. Patock Constr. Co.* (D.N.J., No. 08-4952, filed March 11, 2009), 2009 WL 689629, at *6 ("An arbitrator's award is **not per se void** because it was rendered

13

outside the time limits stated in the [CBA].") (citing *Local Union 560*) (emphasis added).

Similarly, in *Local 272, International Brotherhood of Electrical Workers, AFL-CIO v. Pennsylvania Power Co.*, 645 F. Supp. 138 (W.D. Pa. 1986), the United States District Court for the Western District of Pennsylvania held that an arbitration award was not invalid because it was rendered five days after the time specified in the parties' CBA. In so holding, the district court noted that the CBA did not state the consequences of failure to file an award within a specified time; the parties' past conduct indicated that the time limit was directory and not mandatory; and the union failed to assert any prejudice or harm resulting from the negligible delay. Absent express contractual language to the contrary, the district court clarified that it would **"not read into the contract a provision of automatic invalidation."** *Id.* at 139 (emphasis added).

We are persuaded by the reasoning of the federal courts on this issue. The trial court's decision in this case is also consistent with federal precedent. The trial court concluded:

> The final day of the arbitration hearing was . . . June 15, 2023, [and] the neutral arbitrator signed the award on June 22, 2023; however, it was not signed by the [Union] and City arbitrators until July 12, 202[3]. **Although the CB[A] does address the timeframe for issuing an award in grievance arbitration, it does not provide that an untimely award is invalid[,] nor does it otherwise address the consequence of an award that is issued "late." Further, the City fails to provide any case law creating a standard at common law that would invalidate an untimely grievance award. Finally, the City fails to offer any evidence that it was prejudiced by this short delay, and indeed was able to timely appeal the arbitration award.**

(R.R. at 7a (emphasis added).)

14

While the parties' CBA includes a deadline for the issuance of a grievance arbitration award, it does not specify the consequence of a late-issued award, nor does it provide that an award may be automatically invalidated on that basis. As the Third Circuit has cautioned, "if the parties intend to provide for the automatic invalidation of a late award[,] **they must say so in unequivocal language**" in the CBA. *Local Union 560*, 415 F.2d at 226 (emphasis added). Absent such language, the court "will not read into the [CBA] a provision of automatic invalidation." *Local 272*, 645 F. Supp. at 139. Therefore, because the parties' CBA contains no "unequivocal language" providing for the automatic invalidation of an untimely award, we will not read such a provision into the contract.

Moreover, the record establishes that the City did not object to the late issuance of the Award until the filing of its statutory appeal with the trial court.[11] The City also alleges no harm or prejudice as a result of the arbitrators' delay in issuing the Award. We conclude that the Award, which was executed 16 days after expiration of the 10-day deadline in the CBA, was issued within "a reasonable time" after the conclusion of the hearing. *Local Union 560*, 415 F.2d at 226. Under these circumstances, and consistent with federal case law, which we find persuasive, we decline to invalidate the Award on this basis.[12]

---

[11] The record shows that the only objection the City raised prior to the issuance of the fully executed Award was to the issuance of Arbitrator DeSimone's supporting Opinion beyond the 30-day period specified in the CBA, (*see* R.R. at 43a), which the City does not challenge in this appeal.

[12] The City challenges the timeliness of the Award under the CBA, not Act 111. However, this Court has recognized that "[w]hile th[e] time provision [in Section 4(b) of Act 111] is mandatory, it is **not jurisdictional and, therefore, may be waived**." *Campbell v. Castle Shannon Borough*, 476 A.2d 1018, 1019 (Pa. Cmwlth. 1984) (emphasis added). Hence, even under Act 111's "mandatory" language requiring that an award be issued 30 days after appointment of the third arbitrator, our courts have rejected attempts to invalidate an untimely award where the party challenging the award acquiesced in the late filing. *See, e.g.*, *Borough of New Cumberland v. Police Emps. of Borough of New Cumberland*, 467 A.2d 1294, 1297-98 (Pa. 1983) ("[A] party **(Footnote continued on next page…)**

15

## B. Trial Court's Review of Award

Next, the City asserts that the trial court erred in failing to review the Award pursuant to Section 754(b) of the Local Agency Law, 2 Pa.C.S. § 754(b), which applies to appeals from local agency decisions where a complete record has been made.[13] According to the City, the parties' CBA incorporates the disciplinary provisions of the PCSA, and a court must review local agency decisions issued under the PCSA in accordance with the Local Agency Law. We conclude, however, that Section 754(b) of the Local Agency Law is inapplicable to this case.

While the Local Agency Law governs appeals from disciplinary decisions for civil service employees **not** protected by a CBA, *see generally Elliott v. City of Pittsburgh*, 638 A.2d 413 (Pa. Cmwlth. 1994), where a civil service employee **is** protected by a CBA, as in this case, the terms of the CBA control. Here, the parties'

---

whose representative has acquiesced in the extension of proceedings beyond the thirty days specified in [S]ection 4(b) [of Act 111] may not be permitted to nullify an award rendered by the binding arbitration procedures mandated by Act 111."); *Fairview Township v. Fairview Twp. Police Ass'n*, 795 A.2d 463, 467 n.2 (Pa. Cmwlth. 2002) (in a case where the respondent "never complained of the delay in the arbitration proceeding until the [t]ownship filed [its] petition for review," this Court held that if "a party acquiesces in the extension of the arbitration proceeding beyond the time limitations set forth in Section 4(b) of the Act 111, that party may not challenge the timeliness of the arbitration award"), *aff'd*, 839 A.2d 183 (Pa. 2003).

[13] Section 754(b) of the Local Agency Law provides:

In the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency. **After hearing the court shall affirm the adjudication unless it shall find that** the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that **any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence**. . . .

2 Pa.C.S. § 754(b) (emphasis added).

16

CBA states that "**the procedure for** appointments, promotions, and reduction of force, **suspensions** and discharges is" governed by the PCSA. (R.R. at 318a (emphasis added).) Section 9.1(a) of the PCSA, in turn, states with respect to employee discipline:

> No employe in the competitive or non-competitive class in the bureau of police, except any such employe who has been convicted of a felony and whose appellate remedies have been exhausted, **shall be removed, discharged, suspended, demoted or placed on probation, except for just cause which shall not be religious or political**.

53 P.S. § 23539.1(a) (emphasis added). The PCSA also provides that "**[t]he procedure for an employe to challenge a** removal, discharge or **suspension** or placement on probation **is subject to collective bargaining**" in accordance with Act 111. *Id.* (emphasis added). In other words, while employee discipline is governed by the "just cause" provision in the PCSA, the procedure for an employee to challenge discipline imposed is governed by the CBA, if one exists.

Here, the parties' CBA provides that a police officer may elect to have any disciplinary dispute reviewed via Act 111 grievance arbitration. (*See* R.R. at 320a ("The employee may elect to grieve any . . . disciplinary action to arbitration before a tripartite arbitration panel selected in accordance with the [p]olice discipline appeals procedures of the contract."), 393a ("Within fourteen (14) calendar days after receipt of the Director [of Public Safety]'s final decision[,] the [p]olice [o]fficer or the [Union] may file a grievance in writing protesting the disciplinary action. The grievance will include a request for arbitration.").) Hence, once a police officer elects to grieve a disciplinary action under the CBA, the appeal provisions of the Local Agency Law no longer apply. *See City of Arnold v. Wage Policy Comm. of City of Arnold Police Dep't*, 171 A.3d 744, 754-57 (Pa. 2017) (holding that the Local Agency Law did not apply where the parties had agreed to submit any disputes

17

arising under the CBA to mandatory grievance arbitration); *Zipovsky v. City of Hazleton Aggregated Pension Bd.*, 326 A.3d 134, 146 (Pa. Cmwlth. 2024) (holding that under the parties' CBA, a police officer's challenge could only be brought through the dispute resolution process set forth in the CBA and, therefore, the Local Agency Law did not apply to the officer's petition challenging the calculation of his pension benefits).

As explained above, because this case involves an Act 111 grievance arbitration award, the trial court's review of the Award was limited to narrow certiorari. Thus, the trial court correctly concluded that it was "bound by Act 111 arbitration standards, which provides that when an appeal from an arbitration award falls within narrow certiorari and the question involves fact-finding or an interpretation of the CBA, the standard of 'extreme deference' to the arbitrator's award applies." (R.R. at 9a (citation omitted)); *see Borough of Montoursville v. Montoursville Police Bargaining Unit*, 958 A.2d 1084, 1089 (Pa. Cmwlth. 2008) ("Because the [a]rbitrator's award was based on the [a]rbitrator's findings of fact and interpretation of disputed contract terms and conditions, our standard of review is one of extreme deference to the [a]rbitrator."). We conclude that the trial court employed the proper legal standard in reviewing the Award in this case. Therefore, the trial court did not err in failing to review the Award under Section 754(b) of the Local Agency Law.

### C. Arbitrators' Jurisdiction and Powers

The City asserts that the trial court erred in affirming the Award because the arbitrators exceeded their jurisdiction and powers.[14] Specifically, the City contends that the arbitrators improperly construed the meaning of "just cause" in the CBA

---

[14] Questions relating to the arbitrators' jurisdiction and powers fall within our narrow certiorari review. *See Betancourt*, 656 A.2d at 90.

18

without reference to case law interpreting Section 9.1(a) of the PCSA. The City also contends that the arbitrators ignored the parties' agreed-upon contractual provision that just cause for disciplinary suspensions will be determined by reference to the PCSA.

The question of an arbitrator's jurisdiction "goes to his . . . power to decide an issue in dispute rather than his . . . fashioning of an award." *Bensalem Township v. Bensalem Twp. Police Benevolent Ass'n, Inc.*, 803 A.2d 239, 243 (Pa. Cmwlth. 2002). "[A]n arbitrator exceeds his jurisdiction only when he addresses issues not submitted to him." *Pa. State Police v. Pa. State Troopers' Ass'n (Keyes)*, 54 A.3d 129, 133 (Pa. Cmwlth. 2012); *see also City of Pittsburgh v. Fraternal Ord. of Police, Fort Pitt Lodge No. 1*, 224 A.3d 702, 712 (Pa. 2020) ("[A]s long as an [arbitrator's] award concerns terms and conditions of employment, and the arbitrator does not require the performance of an illegal act—or one that a party could not do voluntarily—the authority prong of narrow certiorari is generally met."). However, an arbitrator has wide latitude to address any issues that are properly submitted and "may speak to an issue if it is reasonably subsumed within the issues properly before the arbitration panel." *Michael G. Lutz Lodge No. 5 v. City of Philadelphia*, 129 A.3d 1221, 1231 (Pa. 2015).

Section 9.1(a) of the PCSA, which is incorporated into the parties' CBA, provides that discipline may be imposed on an officer "for just cause which shall not be religious or political," 53 P.S. § 23539.1(a), but does not provide a more specific definition of "just cause." Notably, while the City asserts that the arbitrators erred in "fail[ing] to follow well-established case law" interpreting the PCSA, the City identifies no such case law in its briefs. (City's Br. at 17, 24; City's Reply Br. at 11-12.) Nor has our research revealed any case law specifically interpreting the "just

19

cause" provision in Section 9.1(a) of the PCSA.[15]  Consequently, we cannot fault the arbitrators for failing to reference nonexistent precedent in their decision.

Arbitrator DeSimone stated that "[t]he issue presented is whether the Grievant was disciplined for just cause" and that "[t]he parties recognize[d] the City's managerial right to manage and supervise [o]fficers as set forth in . . . the [CBA] includes the right to discipline officers for just cause."  (R.R. at 113a.)  As the trial court correctly observed, the arbitrators' determination of whether the discipline imposed on Grievant was for "just cause" required them to interpret the parties' CBA.  (*Id.* at 8a.)  "Where a governmental employee has been discharged for 'just cause' and that term is undefined in the [CBA], the arbitrator has the authority to 'interpret the terms of the agreement, including the undefined term "just cause" and to determine whether there was just cause for'" the discipline imposed.  *Dep't of Corr. v. Pa. State Corr. Officers Ass'n*, 923 A.2d 1212, 1217 (Pa. Cmwlth. 2007) (citation omitted).  Therefore, we conclude that the arbitrators had jurisdiction to interpret "just cause" as contemplated by the CBA and to make a factual

---

[15] While we have no guidance from our appellate courts specifically regarding Section 9.1(a) of the PCSA, this Court has previously defined "just cause" in the civil service context as follows:

> "What constitutes ample [just] cause for removal . . . must necessarily be largely a matter of discretion on the part of the head of the department.  To be sufficient, however, the cause should be personal to the employee and such as to render him unfit for the position he occupies, thus making his dismissal justifiable and for the good of the service.
>
> . . . **All that the law requires is that the cause be not religious or political, but concerned solely with the inefficiency, delinquency or misconduct of the employe**. . . ."

*Benvignati v. Civ. Serv. Comm'n*, 527 A.2d 1074, 1075 (Pa. Cmwlth. 1987) (quoting *In re O'Gorman*, 187 A.2d 581, 583-84 (Pa. 1963)) (emphasis added).

20

determination as to whether just cause for Grievant's suspension existed based on the evidence of record.[16]

We also reject the City's contention that the arbitrators exceeded their authority in reducing Grievant's discipline based on their finding that the City did not have just cause to issue a five-day suspension for his misconduct. (*See* City's Br. at 6, 27.) This Court has held that an arbitrator does not exceed his authority if the acts he requires of the public employer are legal, relate to the terms and conditions of employment, and are acts that the employer could perform voluntarily. *Keyes*, 54 A.3d at 133. Thus, a reviewing court may not set aside an Act 111 award unless the arbitrator mandated an illegal act or addressed issues beyond the terms and conditions of employment. *Bristol Borough v. Bristol Borough Police Benevolent Ass'n*, 815 A.2d 662, 663 n.3 (Pa. Cmwlth. 2003).

Here, the parties' CBA unequivocally states that "[t]he arbitrator[s] shall fashion a remedy **in their sole discretion**." (R.R. at 394a (emphasis added).) Likewise, our courts have held that when an officer's discipline is grievable under a CBA, an arbitrator is within his power to reduce the discipline imposed, so long as the award does not require the public employer to perform an illegal act or an act that it could not voluntarily perform. *See N. Berks Reg'l Police Comm'n v. Berks Cnty. Fraternal Ord. of Police, Lodge #71*, 230 A.3d 1022, 1035 (Pa. 2020); *see also City of Philadelphia v. Fraternal Ord. of Police, Lodge No. 5* (Pa. Cmwlth., No. 1243 C.D. 2021, filed June 28, 2023), slip op. at 15 ("[C]ourts have resisted attempts

---

[16] "[U]nder prevailing law, an arbitrator's legal errors in the interpretation of the [CBA] fall outside the scope of appropriate judicial review in the Act 111 context." *City of Pittsburgh*, 224 A.3d at 714 n.10.

21

to review Act 111 arbitration awards that mitigate discipline as an excess of authority.").[17]

The propriety of Grievant's suspension was submitted to the arbitrators, and the parties' CBA states that disciplinary matters are grievable under Act 111. (*See* R.R. at 320a, 393a.) The Award issued by the arbitrators was contemplated by the CBA and did not require the City to perform an illegal act or an act that it could not voluntarily perform. In the Opinion, after setting forth her factual findings, Arbitrator DeSimone concluded that "Grievant's failure to clarify the orders given to him on October 28, 2022 support[s] only the single charge of [n]eglect of [d]uty for which a[n] oral reprimand is the fully corrective disciplinary response." (*Id.* at 115a.) We conclude that the arbitrators did not exceed their authority in reducing Grievant's suspension based on the record evidence and their factual findings. *See City of Pittsburgh*, 111 A.3d at 800 ("An arbitrator **does not exceed his authority** if the acts he requires the public employer to do are legal; are acts that the employer could do voluntarily; and relate to the terms and conditions of employment.") (emphasis added).

### D. Constitutional Violations

Lastly, the City asserts that the Award represents an as-applied violation of the Contract Clause of the Pennsylvania Constitution, which provides that "[n]o . . . law impairing the obligation of contracts . . . shall be passed." Article I, section 17 of the Pennsylvania Constitution, PA. CONST. art. I, § 17.[18] In particular, the City contends that the arbitrators violated the Contract Clause by "intentionally

---

[17] Under Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), we may cite an unreported memorandum decision of this Court, issued after January 15, 2008, for its persuasive value.

[18] The question of whether the arbitrators violated the City's constitutional rights is within our narrow certiorari review. *See Betancourt*, 656 A.2d at 90.

ignor[ing]" the just cause provision of the PCSA in rendering their decision and in directing the City to reduce Grievant's discipline and to make him "whole for all lost pay and benefits." (City's Br. at 24, 26-27.) The City also contends that the arbitrators violated the Contract Clause by "ignoring the formalities required for [the Award's] execution." (*Id.* at 27.)

Typically, a party asserts an as-applied constitutional challenge to a statute, law, or ordinance. An as-applied challenge to a law's constitutionality "'does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right.'" *Weissenberger v. Chester Cnty. Bd. of Assessment Appeals*, 62 A.3d 501, 505 (Pa. Cmwlth. 2013) (*en banc*) (citation omitted). "Moreover, an as-applied challenge will not necessarily invalidate a law given that a law 'may operate in an unconstitutional way as to one particular individual or company, as to which it may be declared void, and yet may, as to others still be effective.'" *Nigro v. City of Philadelphia*, 174 A.3d 693, 700 (Pa. Cmwlth. 2017) (citation omitted).

Here, the City does not point to a statute or law that has been applied in a manner that allegedly violates its constitutional rights. Rather, the City asserts that the arbitrators' "[A]ward is the functional equivalent of legislation passed after the parties reached a contractual agreement" and, therefore, violates the Contract Clause. (City's Br. at 25-26.)

An impairment of contract claim "requires [a party] to demonstrate that a change in state law has operated as a substantial impairment of a contractual relationship." *South Union Township v. Dep't of Env't Prot.*, 839 A.2d 1179, 1188 (Pa. Cmwlth. 2003). "A court makes three threshold inquiries in evaluating a Contract Clause claim: (1) whether there is a contractual relationship; (2) whether

23

a change in a law has impaired that contractual relationship; and (3) whether the impairment is substantial." *Pa. Workers' Comp. Judges Pro. Ass'n v. Exec. Bd. of Com.*, 39 A.3d 486, 494 (Pa. Cmwlth. 2012), *aff'd*, 66 A.3d 765 (Pa. 2013). Furthermore, this Court has explained:

> [T]he Contract Clause "prohibition is aimed at the **legislative power of the State, and not at the decisions of its courts, or the acts of administrative or executive boards or officers, or the doings of corporations or individuals**." Thus, a court must first consider whether there is shown on the record **any act of state legislation**.
>
> Simply stated, **an act of state legislation requires an act of legislative power**. . . . While such lawmaking power may, for purposes of the Contract Clause, be expressed in a form other than a statute such as an ordinance of a municipal corporation or political subdivision, **mere administrative actions do not fall within the ambit of the constitutional prohibition**.

*Id.* (internal citations omitted) (emphasis added).

We conclude that the City does not set forth the basic elements of a Contract Clause violation. The Award in this case, issued by a panel of arbitrators pursuant to a CBA, is not a "legislative act" that implicates the protections of the Contract Clause. The Award is more akin to an administrative decision that falls outside the scope of constitutional protection. Therefore, the City fails to establish an as-applied violation of the Contract Clause.

Furthermore, to the extent the City asserts that the arbitrators violated its constitutional rights by allegedly reforming the terms of the CBA, we also reject this claim. It is well settled that

> [w]hile granted broad powers, and[] . . . free from only the most limited of judicial review, an arbitration panel "does not sit to dispense [its] own brand of . . . justice." As artfully explained by the Commonwealth Court, "[A]n arbitrator does not have a roving commission to do what he or she believes is necessary to put everything right, to construct a

24

'better agreement.' **Arbitrators are required to address the issues submitted within the context of the positions of the parties and effectuate the relief requested, not to reform the [CBAs].**"

*Michael G. Lutz*, 129 A.3d at 1230 (citations omitted) (emphasis added).

Our Supreme Court has described the task of distinguishing between reformation and interpretation of a CBA as unmanageable "[a]bsent **an indisputably overt instance of reformation**." *City of Pittsburgh*, 224 A.3d at 714 (emphasis added); *see City of Philadelphia v. Fraternal Ord. of Police, Lodge No. 5*, 307 A.3d 1263, 1268 (Pa. Cmwlth.) (*en banc*) (holding that arbitrator in Act 111 case did not exceed his authority in ordering reinstatement of police officer and converting his dismissal to suspension without pay, where arbitrator's legal reasoning did not reform CBA but instead demonstrated "'sufficient interpretative focus'" and was, at most, error of law) (citation omitted), *appeal granted in part on other grounds*, 326 A.3d 87 (Pa. 2024).

We conclude that there was no overt act of contract reformation in this case. As explained more fully in Section III.C., *supra*, the arbitrators did not violate the terms of the parties' CBA in reaching their decision. The Award issued by the arbitrators was contemplated by the CBA and did not require the City to perform an illegal act or an act that it could not voluntarily perform. Accordingly, we conclude that the arbitrators did not improperly modify the CBA's terms. (*See* R.R. at 9a (rejecting the City's as-applied constitutional challenge because the trial court found that the "[A]ward did not violate the parties' CBA").)[19]

---

[19] It is true, as the City points out, that our Supreme Court has stated that it "do[es] not foreclose the possibility of an as-applied challenge to an Act 111 grievance arbitration award under [a]rticle III, [s]ection 31" of the Pennsylvania Constitution, PA. CONST. art. III, § 31, in a case involving the same parties but very different facts. *City of Pittsburgh*, 224 A.3d at 714; *see Franklin Cnty. Prison Bd. v. Pa. Lab. Rels. Bd.*, 417 A.2d 1138, 1142-43 (Pa. 1980) ("Where an arbitration award would **infringe on the legislative power of the General Assembly or of the**
**(Footnote continued on next page…)**

## IV. Conclusion

In sum, we conclude that the Award is valid, the trial court exercised the proper standard of review, the arbitrators did not exceed their jurisdiction or powers in issuing the Award, and the Award did not violate the City's constitutional rights. Accordingly, we affirm the trial court's Order.

_____
RENÉE COHN JUBELIRER, President Judge

---

**lawmaking body of a political subdivision of the Commonwealth, as where the appropriation of funds and/or the levying of taxes is required by the award**, then that award is invalid under [a]rt[icle] III, section 31 [of the Pennsylvania Constitution] as an attempted delegation of legislative power to a non-legislative body.") (emphasis added). However, the Supreme Court's statement in *City of Pittsburgh* was dictum, which the Court recognized. *See City of Pittsburgh*, 224 A.3d at 714 (expressly "declin[ing] to proceed beyond the parameters of the case presented to the statutory appeals and intermediate courts and the reasoning they applied"). In any event, the City premises its as-applied constitutional challenge on the Contract Clause of the Pennsylvania Constitution, not on article III, section 31. (*See* City's Br. at 24, 26-27.)

26

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh,      :
     Appellant  :
          :
    v.      : No. 415 C.D. 2024
          :
Fraternal Order of Police, Fort Pitt :
Lodge No. 1 (Dalton Dailey,  :
Grievant)       :

## **O R D E R**

NOW, March 17, 2025, the Order of the Court of Common Pleas of Allegheny County, dated March 21, 2024, is hereby AFFIRMED.

_____
RENÉE COHN JUBELIRER, President Judge